## METHOD, ESTATE OF, In Re

Ohio Probate Court, Franklin Co

Decided Dec 2, 1936

Charles R. Doll, Columbus, for executors.
Wilbur E. Benoy, Columbus, for The Supreme Liberty Life Insurance Co.

### OPINION

By McCLELLAND, J.

This matter comes before the court on the application of The Supreme Liberty Life Insurance Company, of Chicago, Illinois, to have allowed as a just claim against the estate of William A. Method, a certain obligation growing out of the following named facts:

On October 1, 1931, the Rocky Fork Outing Club borrowed the sum of Fifty Nine Hundred Dollars ($5900.00) from the Supreme Liberty Life Insurance Company, of Chicago, Illinois, and in evidence thereof executed its promissory note, which note was signed "The Rocky Fork Outing Club, by W. A. Method, President," and also by W. A. Method and other persons as individuals. This note was secured by a mortgage on certain real estate owned by the Rocky Fork Outing Club and some other individuals.

The significant portion of the note is that portion which determined the character of the obligation of the Rocky Fork Outing Club and W. A. Method, which reads as follows:

"The undersigned do hereby jointly and severally promise to pay to the order of The Supreme Liberty Life Insurance Company at its office at Chicago, Illinois, the sum of Five Thousand Nine Hundred ($5,900.00) Dollars, together with interest at the rate of six and one-half per cent per annum, payable semi-annually on the 1st day of April and the 1st day of October of each year." * * *

It is quite apparent therefore, that W. A. Method made himself liable jointly and severally with the Rocky Fork Outing Club and the other signers of said note.

The obligation remained the same until the 25th of October, 1934, when an amendment was made thereto, which grew out of the following facts: On the 5th day of June, 1934, the payments provided for in said note being in default, the Supreme Liberty Life Insurance Company filed an action in the Common Pleas Court, of Franklin County, Ohio, asking for a judgment on said note and the foreclosure of said mortgage. Said action was dismissed on or about the 25th day of October, 1934, a part of the consideration for which was a supplemental agreement bearing the same date, by the terms of which it was agreed that the balance due on said mortgage of October 1, 1934, was $6316.56, and, in addition thereto, the amount due was reduced to the sum of $4,246.56, being a reduction of $2,070.00. The agreement further provided that the signors should, concurrently with the agreement, pay the sum of Two Hundred Fifty Dollars ($250.00) on said balance. In addition thereto, and as a further consideration, the due date of said obligation was extended so that the balance should be paid in monthly installments of not less than $40.00, but that the entire balance should be paid on or before October 1, 1944. The significant portion of this amendment to the agreement, is contained in Article 3 thereof, the first paragraph of which reads as follows:

"3. Further, in consideration thereof, it is understood and agreed that the undersigned, who hereby guarantees the payment of said balance so remaining due on said mortgage, shall be entitled to an extension of time for the payment of said balance, provided the installments shall be promptly and punctually met."

It is therefore apparent that it was the intention of the parties making said agreement that all of the signors of this agreement became guarantors of the payment of the obligation. It is significant that the Rocky Fork Outing Club, by W. A. Method, signed this agreement, as well as W. A. Method, an individual, and also other individuals.

Article 4 of said agreement, contains the following language:

"4. It is further understood and agreed that unless said installments are paid when and as they fall due, or within sixty (60) days thereafter, the extension of time for the payment of the balance of said mortgage indebtedness granted herewith shall, at the option of the Supreme Liberty Life Insurance Company, and without notice to the undersigned, be void and of no effect and the rights of the parties shall be governed by the original mortgage of record in M. R. 850, page 233, Recorder's Office, Franklin County, Ohio; and that said The Supreme Liberty Life Insurance Company shall, upon default in the payment of said installments, or either of them, be entitled to proceed in foreclosure and to hold the undersigned liable for the balance due on said mortgage indebtedness under the terms of this agreement."

Had it not been for the last provision above quoted, W. A. Method would probably have been in the position of a guarantor instead of a joint maker or surety. Bouvier's Law Dictionary, in his discussion on guaranty, at page 1386, uses the following language:

"It is distinguished from suretyship in being a secondary, while suretyship is a primary obligation; or, as sometimes defined, guaranty is an undertaking that the

debtor shall pay; suretyship, that the debt shall be paid. Or again, a contract of suretyship creates a liability for the performance of the act in question at the proper time, while the contract of guaranty creates a liability for the ability of the debtor to perform the act; Bayl, Sur. & Guar., 3. Guaranty is an engagement to pay on a debtor's insolvency, if due diligence be used to obtain payment. Reigart v·White, 52 Pa. 440. But if the principal debtor is insolvent, the creditor need not pursue him before suing the guarantor. National Bank of Chester County v Thomas, 220 Pa. 360, 69 Atl. 813.

The undertaking is essentially in the alternative. A guarantor cannot be sued as a promissor, as the surety may; his contract must be specially set forth. A guarantor warrants the solvency of the promissor, which an indorser does not; President, etc., of the Oxford Bank v Haynes, 8 Pick. (Mass.) 423, 19 Am. Dec. 334.

The distinction between suretyship and guaranty has been thus expressed: A surety is usually bound with his principal by the same instrument, executed at the same time, and on the same consideration. He is an original promissor and debtor from the beginning and is held, ordinarily, to know every default of his principal. Usually, he will not be discharged either by the mere indulgence of the creditor to the principal, or by want of notice of the default of the principal, no matter how much he may be injured thereby. On the other hand the contract of the guarantor is his own separate undertaking, in which the principal does not join. It is usually entered into before or after that of the principal, and is often supported on a separate consideration from that supporting the contract of the principal. The original contract of his principal is not his contract, and he is not bound to take notice of its nonperformance. He is often discharged by the mere indulgence of the creditor to the principal, and is usually not liable unless notified of the default of the principal."
* * *

But whether there was a guaranty existing or not, the language of the amended agreement is such that when the obligation does become due on October 1, 1944, or any part of it becomes due, then the extension agreement is void and the rights under the mortgage then becomes operative. It is significant that the obligation under the old note is eliminated as far as the principal is concerned, and the mortgage is given to secure the reduced principal agreed upon by the contract. So, it is apparent that in no event could the guaranty become operative, because immediately upon a default, then the obligation refers back to the original agreement.

We are therefore compelled to come to the conclusion that the obligation that arises under the supplemental contract is a ·joint and several obligation of W A. Method, The Rocky Fork Outing Club, and the other signors, to the Supreme Liberty Life Insurance Company. There is no disagreement as to the amount of the obligation. That is a matter of contract. There is no contingency as to the obligation becoming due. It will fall due not later than October 1, 1944, but may fall due before that date, depending upon whether the payments are made according to the terms of the supplemental agreement. There is therefore no contingency as to the amount of the obligation, or that it will fall due. We must, therefore, hold that the obligation of W. A. Method is a joint and several obligation and that William A. Method and his estate is a primary obligor. The only question therefore that remains is the relation of that obligation to the estate of William A. Method.

William A. Method died on the 16th day of January, 1936. The executors of his estate were appointed and qualified on January 23, 1936. On March 28, 1936, the claim of the Supreme Liberty Life Insurance Company was filed with the executors, as shown by the evidence submitted at this hearing. A schedule of debts was filed within the statutory time in which the claim was listed but marked "disputed." On April 19, 1936, the claimant received notice of the rejection of its claim at Chicago, Illinois. It is apparent that the claim was filed with the executors within the statutory time. §10509-112 GC reads as follows:

"Sec 10509-112 GC. PRESENTATION, ALLOWANCE AND REJECTION OF CLAIMS. Creditors shall present their claims whether due or not due, to the executor or administrator within four months after the date of his appointment. Such executor or administrator shall allow or reject all claims, except contingent claims, within thirty days after their presentation. Any claim presented after the time herein provided shall not prevail as against bona fide purchasers or as against executors and

212

administrators who have acted in good faith, or against a surviving spouse who has made the election to take under the will or at law, and, except as to negotiable instruments maturing subsequent to the expiration of such time, any such late claim shall not prevail as against bona fide distributees."

It is quite apparent that the executors neither allowed nor rejected the claim. The testimony fails to disclose that the claimant demanded that the claim be allowed as provided by §10509-113 GC.

Counsel for the executors apparently consider the action of the executors as a rejection of the claim. Even though it were rejected, it would not be the duty of the claimant, neither would it be his right to bring an action upon the claim because it was not due. §10509-133 GC provides that when a claim has been rejected the claimant shall bring a suit within two months of the date of rejection or within two months after some part of it becomes due. It is apparent that no part of the debt was due and therefore the claimant had no right of action which could be prosecuted in any court upon the merits of the claim.

The claimant files his action in this court apparently under §10509-148 GC of the Probate Code, which reads as follows:

"Sec 10509-148—ACTION ACCRUING AFTER NINE MONTHS. A creditor whose right of action does not accrue within nine months after the date of the appointment of the executor or administrator, may present his claim to the court from which the letters issued, at any time before the estate is fully administered. If, on examination thereof, it appears to the court that the claim is justly due from the estate, by consent of the creditor and executor or administrator, it may order the claim to be discharged, as if due after discontinuing interest, or that the executor or administrator retain in his hands sufficient to satisfy it. If an heir of the deceased, or devisee, or others interested in the estate, offers to give bond to the alleged creditor, with sufficient surety or sureties for the payment of the demand, in case it be proved to be due from the estate, the court may order such bond to be taken, instead of ordering the claim to be discharged, or requiring the executor or administrator to retain assets aforesaid."

In connection with this statute we must consider §10509-124, GC, which pertains to debts not due, and reads as follows:

"Sec 10509-124, GC. DEBTS NOT DUE. Debts not due may, and on demand of the holder shall, if assets are available therefor, be paid by an executor or administrator, according to the class to which they belong, after discontinuing the legal interest upon the sum paid for the time unexpired, if the claim does not bear interest before maturity. If a creditor whose claim is not due refuses to accept payment as herein provided, the executor or administrator shall set apart sufficient assets to satisfy it, but if such assets shall thereafter become insufficient, to pay such claim in full because of depreciation or loss, without fault of the executor or administrator, he shall not become personally liable to such creditor by reason thereof."

The interpretation of these two statutes has given this court considerable concern. When we consider §10509-124 GC, it is apparent that that statute must apply to obligations about which there is no dispute, and which do not mature within the time for the settlement of an estate. It is significant that the legislature uses the word "debts" in §10509-124 GC while in §10509-148 GC the word "creditor" is used. §10509-148 GC provides that a creditor may present his claim to the court at any time before the estate is fully administered. It also provides that if it appears to the court that the claim is justly due, the court may, but only with the consent of the creditor and the executor or administrator, order that it be discharged, or that the fiduciary retain money in his hands sufficient to satisfy the claim.

The decision of the court however, is not conclusive if any of the parties dispute the claim, for §10509-149 GC provides that the decision of the court shall not be conclusive against the executor or administrator or other person interested who oppose the allowance of the claim unless it is proven to be due in an action commenced by the claimant within six months after it becomes payable.

It is difficult to reconcile these two last mentioned statutes, unless we hold that §10509-124 GC applies to claims, the merits of which are undisputed by the administrator, and which have been allowed and so shown on the schedule of debts, but not due.

Secs 10509-148 and 149 GC, can be invoked only with reference to claims which

have been disallowed or which have been disputed by the fiduciary, and which do not fall due within the time prescribed by statute for the administration of the estate. This last mentioned statute simply gives a supplementary remedy to those given in other statutes and permits the claimant, whose claim has been disputed or disallowed by the fiduciary, to have an adjudication thereof before the estate is closed with the consent of the fiduciary against whom the claim is filed. If the fiduciary consents, the court may order the claim to be discharged, or, with the fiduciary's consent, he shall retain certain property to satisfy the claim. But if an heir of the deceased or other persons mentioned in the latter part of that section do not give bond as therein provided, then the claim may be considered an adjudicated claim and the same may be safely paid by the fiduciary. But, if any interested person should give bond as provided by the statute, then the claimant may bring an action in the proper court within six months from the time the claim or any part thereof becomes due.

It is therefore our opinion that §10509-124, GC, only applied to claims which have been allowed, and which are not disputed by anyone, but which are not due. §§10509-148, 149, GC, apply only to disputed claims which have not been allowed by the administrator, and which have been disallowed as shown by the schedule of debts.

We therefore find that the application of The Supreme Liberty Life Insurance Company has been properly filed, that it invokes a remedy provided by the statute and that the remedy may be given only with the consent of the fiduciary. Inasmuch as the fiduciary, by statement of its counsel, does not consent to an order requiring the fiduciary to retain in its hands sufficient assets to satisfy the claim, the court is helpless under §10509-148, GC, to issue such an order. Inasmuch as the claim was filed with the fiduciary within the four months provided by statute for filing claims, and, inasmuch as we have held that the obligation of the estate of William A. Method is a joint and several obligation with the other makers of the note, the fiduciary has a legal obligation to either pay the same, or set aside a sufficient amount of money to meet the claim when the same becomes due, as provided by §10509-124 GC. Then, when the obligation comes due, or any part

of it falls due, the claimant may bring an action in the proper court to determine the merits of the claim.

If the court hearing the same finds the claim to be a valid one, the claimant is then entitled to the property withheld for that purpose. If the court finds that the claim is not a claim against the estate, then the fund so held is subject to be distributed according to law.

An order may be drawn accordingly.