HOPKINS, GRDN., APPELLANT, *v.* INA UNDERWRITERS INSURANCE COMPANY ET AL.; OHIO CASUALTY INSURANCE COMPANY, APPELLEE.

(No. 87 CA 6 — Decided March 24, 1988.)

*James R. Kingsley,* for appellant.
*Charles W. Wilburn,* for appellee.

STEPHENSON, J. This is an appeal from a judgment entered by the Pickaway County Court of Common Pleas dismissing the Ohio Casualty Insurance Company, defendant below and appellee herein, from the action on the complaint filed by Shirley Hopkins in her capacity as guardian of the estate of Donald M. Hopkins, a minor, plaintiff below and appellant herein, seeking recovery on the judge's two surety bonds.

Appellant assigns the following error:

"The trial court erred when it granted summary judgment to Ohio Casualty Insurance Company and it erred when it denied plaintiff's motion for a new trial, *i.e.,* the official bond of a probate judge posted pursuant to O.R.C. 2101.03 is liable for his nonfeasance and malpeasance [*sic*] while in office."

On January 20, 1982, appellant filed a complaint naming appellee, Ohio Casualty, INA Underwriters Insurance Company, and the Buckeye Union Insurance Company as defendants, and averring, in pertinent part, as follows. Appellant was previously married to Clarence W. Little and, on April 4, 1976, Donald M. Little, later adopted by Harold Hopkins, was born as issue of such marriage. On August 28, 1978, Clarence W. Little was killed in an automobile accident. On September 5, 1978, appellant entered into an attorney-client relationship with David L. Kraft. On February 7, 1979, appellant was appointed administratrix of the estate of Clarence W. Little. On January 16, 1980, a jury awarded damages in the amount of $200,000 to the Little estate in a wrongful death action.

It was further averred, in substance, that on February 21, 1980, appellant was appointed guardian of the estate of her minor son, Donald M. Little (n.k.a. Hopkins), that the guardianship proceedings were presided over during the times pertinent to this appeal by Pickaway County Common Pleas Court, Probate Division Judge Guy G. Cline, and that Judge Cline did not require appellant or her attorney to file an inventory within the time specified in R.C. 2111.14(A), failed to remove appellant pursuant to R.C. 2111.14(A), did not require appellant to file an account, released the surety without requiring a substitute, and granted an application for distribution of wrongful death proceeds without the signature of the fiduciary, without reopening the former estate, and without requiring the posting of an additional bond.

It was then averred, in substance,

that David L. Kraft failed to return $99,094.63 in funds that belonged to appellant and, as a direct and proximate result of Judge Cline's claimed nonfeasance and malfeasance, the guardianship and estate were diminished in the amount of $99,094.63.

Appellant's complaint prayed for $7,000 from appellee, $99,094.63 from Buckeye Union, surety on appellant's administratrix and guardian bonds, and $104,094.63 from INA Underwriters, which issued a lawyer's professional liability insurance policy for David L. Kraft.

Appellee was the surety for Judge Cline, issuing two bonds, attached to the complaint, in the total sum of $7,000 which provided, *inter alia,* as follows:

"If the said Principal shall well, truly and faithfully perform all official duties required by law of such official during the term aforesaid, the principal and the surety hereby agreeing that if said bond is required by any statute, all the provisions of such statute are hereby made a part of this bond, then this obligation shall be void; otherwise to remain in full force and effect."

On February 9, 1982, appellee Ohio Casualty filed a motion for summary judgment or, in the alternative, to dismiss it as a party defendant. On February 19, 1982, defendant Buckeye Union filed an answer to appellant's complaint and a counterclaim. On February 23, 1982, defendant INA filed an answer to appellant's complaint. On the same date, appellant filed a memorandum contra appellee's motion for summary judgment or, in the alternative, to dismiss appellee.

On March 3, 1982, the trial court issued a decision granting appellee's motion to dismiss and stating that R.C. 2101.03 "does not create a cause of action against a probate judge for the alleged negligent acts which are within the scope of authority (as alleged in this case) and are judicial functions of the court in question as set out in the law." On March 4, 1982, appellant filed a motion for a new trial on the ground that the trial court's March 3, 1982 decision was contrary to law pursuant to Civ. R. 59(A)(7). On April 5, 1982, appellee filed a memorandum contra appellant's motion for a new trial.

On April 5, 1982, the trial court entered a judgment reflecting its March 3, 1982 decision granting appellee's motion to dismiss. On April 27, 1982, the trial court overruled appellant's motion for a new trial. On October 30, 1984, an entry of appellant voluntarily dismissing defendant INA Underwriters was filed. On January 7, 1987, an entry was filed in which appellant voluntarily dismissed defendant Buckeye Union and Buckeye Union voluntarily dismissed its counterclaim against appellant. On February 6, 1987, appellant filed a timely notice of appeal from the April 27, 1982 entry overruling appellant's motion for a new trial.

Appellant's assignment of error asserts that the trial court erred when it granted summary judgment to appellee and further erred in denying appellant's motion for a new trial in that the surety of the official bond of a probate judge posted pursuant to R.C. 2101.03 is liable for the judge's nonfeasance and malfeasance while in office. Initially, we note that the trial court granted appellee's motion to dismiss rather than appellee's motion for summary judgment herein.

For civil liability to exist, a judge must lack jurisdiction, either personal or subject matter, and he must take some action in a judicial capacity which violates the rights of a party to the lawsuit. *Wilson* v. *Neu* (1984), 12 Ohio St. 3d 102, 12 OBR 147, 465 N.E. 2d 854. If, however, a judge has the requisite jurisdiction over the controversy,

he is immune from liability even though his acts are voidable as taken in excess of jurisdiction. *Wilson, supra,* at 104, 12 OBR at 148, 465 N.E. 2d at 856; *Kelly* v. *Whiting* (1985), 17 Ohio St. 3d 91, 94, 17 OBR 213, 215, 477 N.E. 2d 1123, 1127; *Voll* v. *Steele* (1943), 141 Ohio St. 293, 25 O.O. 424, 47 N.E. 2d 991; *Tymcio* v. *State* (1977), 52 Ohio App. 2d 298, 6 O.O. 3d 310, 369 N.E. 2d 1063. In the case at bar, the averred acts of misfeasance and nonfeasance by Judge Cline concern acts solely of a judicial or discretionary capacity and none of the acts averred to have been committed was done without personal or subject matter jurisdiction. Accordingly, Judge Cline was judicially immune from suit with respect to the actions averred herein.

Judges are generally not required to give bonds for the faithful performance of their duties, but statutes sometimes require bonds to be given by judges of particular courts. 46 American Jurisprudence 2d (1969) 104, Judges, Section 12. In Ohio, due to the fact that juvenile and probate judges in some instances serve as their own clerks of court and thereby perform certain ministerial duties, they are required to execute their own bond. See, *e.g.,* R.C. 2101.03; R.C. 2151.12; see, generally, 22 Ohio Jurisprudence 3d (1980) 93, Courts and Judges, Section 41.

R.C. 2101.03 provides as follows with respect to the bond of probate judges:

"Before entering upon the discharge of his duties, the probate judge shall give a bond to the state in a sum not less than five thousand dollars. Such bond shall have sufficient surety, approved by the board of county commissioners, or by the county auditor and county recorder in the absence from the county of two of the members of the board, and shall be conditioned that such judge will faithfully pay over all moneys received by him in his official capacity, enter and record the orders, judgments, and proceedings of the court, and faithfully and impartially perform all the duties of his office. Such bond, with the oath of office required by sections 3.22 and 3.23 of the Revised Code indorsed thereon, shall be deposited with the county treasurer and kept in his office. As the state of business in his office renders it necessary, the board may require the probate judge to give additional bond."

R.C. 2307.06 provides, in pertinent part, as follows:

"When a person forfeits his bond, or *renders his sureties liable thereon, a person injured thereby,* or who is entitled to the benefit of the security, *may bring an action thereon,* in his own name, *against the person and his sureties* to recover the amount to which he is entitled by reason of the delinquency, which action may be prosecuted on a certified copy of the bond." (Emphasis added.)

Appellant's instant action was brought pursuant to R.C. 2307.06 against appellee, the surety on the bond that Judge Cline was required to give pursuant to R.C. 2101.03. Suretyship is the contractual relation whereby one person, the surety, agrees to answer for the debt, default, or miscarriage of another, the principal, with the surety generally being primarily and jointly liable with the principal debtor. *United States* v. *Tilleraas* (N.D. Ohio 1981), 538 F. Supp. 1; *Rhode Island Hosp. Trust Natl. Bank* v. *Ohio Cas. Ins. Co.* (D.R.I. 1985), 613 F. Supp. 1197, 1201; *Galloway* v. *Barnesville Loan, Inc.* (1943), 74 Ohio App. 23, 29 O.O. 214, 57 N.E. 2d 337; *Madison Natl. Bank of London* v. *Seber* (1927), 117 Ohio St. 290, 158 N.E. 543; *In re Method* (P.C. 1936), 26 Ohio Law Abs. 209, 211, 10 O.O. 489, 491.

Because the surety's obligation is

derived from that of the principal, the liability of the surety is ordinarily measured by the liability of the principal. *Justice* v. *Rose* (1957), 102 Ohio App. 482, 3 Ohio Law Abs. 39, 144 N.E. 2d 303; *Riley Constr.* v. *Schillmoeller & Krofl Co.* (Wis. 1975), 236 N.W. 2d 195. As a general rule, a surety on a bond is not liable unless the principal is and, therefore, may plead any defense available to the principal with the exception of defenses which are purely personal to a principal, such as infancy, incapacity, or bankruptcy. 72 Corpus Juris Secundum (1987) 318-319, Principal and Surety, Section 189; 74 American Jurisprudence 2d (1974) 76, Suretyship, Section 104; *Peterson* v. *Midas Realty Corp.* (Ga. App. 1981), 287 S.E. 2d 61, 62; *Aaron* v. *Bankers & Shippers Ins. Co. of New York* (La. App. 1985), 475 So. 2d 379, 382; *Commercial Std. Ins. Co.* v. *Alabama Surface Mining Reclamation Comm.* (Ala. App. 1983), 443 So. 2d 1245, 1249; *Vickers* v. *Chrysler Credit Corp.* (Ga. App. 1981), 280 S.E. 2d 842, 845.

The dispositive issue herein, therefore, is whether the defense of judicial immunity is a defense that may be raised by appellee or merely a personal defense that could only be raised by Judge Cline. Historically, suits were brought in Ohio against public officers in their individual capacity for the nonfeasance, misfeasance, or malfeasance of their ministerial acts, and for recovery upon an alleged breach of their official bond. *Scot Lad Foods* v. *Secy. of State* (1981), 66 Ohio St. 2d 1, 20 O.O. 3d 1, 418 N.E. 2d 1368. Thus, at common law, the sureties on a bond of an official, conditioned upon the faithful performance of his duties, were held liable to all persons unlawfully injured by the nonfeasance, misfeasance, or malfeasance perpetrated by such officer, either by virtue of his office or under color of his office.

*American Guar. Co.* v. *McNiece* (1924), 111 Ohio St. 532, 146 N.E. 77, syllabus; *United States Fid. & Guar. Co.* v. *Samuels* (1927), 116 Ohio St. 586, 157 N.E. 20; but, see, R.C. 9.86, which provides civil immunity for state officers and employees.

Appellant argues that the holdings of *American Guar. Co.* and *United States Fid., supra,* would preclude appellee from raising Judge Cline's judicial immunity defense and, further, that the R.C. 2101.03 requirement of a bond would be rendered meaningless if appellee could successfully assert the judicial immunity defense in an action pursuant to R.C. 2307.06.

However, neither *American Guar. Co., United States Fid.* nor any other case cited by appellant involves the situation herein, where the surety asserts the judicial immunity defense of its principal. Moreover, a surety for a judicial officer is liable for losses due to the officer's negligence or misfeasance in the discharge of ministerial duties and for the officer's acts in a judicial capacity only so far as the officer himself is subject to civil liability. Restatement of the Law, Security (1941) 511, Section 185.

Comment as to this Restatement provision provides, in pertinent part, as follows:

"Bonds are rarely required for judicial officers except those whose duties are to a considerable extent ministerial. The rule stated in this Section has its chief application in connection with bonds required of justices of the peace. *No recourse is allowed against a judge, and hence not against his surety, for the judge's errors in performing his judicial functions. Few persons would care to accept judicial office if they were personally responsible for errors of judgment. No surety can be expected to guarantee judicial perfection. The law affords other methods for relieving the litigants from*

*the consequences of judicial error. * * *"* (Emphasis added.)

In *Phelps* v. *Dawson* (C.A. 8, 1938), 97 F. 2d 339, the rationale for extending the immunity defense from public officials to sureties on their official bonds was set forth as follows at 342-343:

"* * * The immunity given the principals of these bonds is in no sense a personal privilege nor is it one arising from any legal incapacity in them. The sole basis of such immunity is a public policy resting entirely upon the public good to be brought about by having the official action of certain classes of public officials entirely uninfluenced by apprehension of personal civil liability. [Citations omitted.] To allow recovery against the surety as to such official acts would (a) result in weakening (if not entirely destroying) the effectiveness of this public policy or (b) it would make it burdensome or impossible to secure official bonds.

"* * *

"We think the proper course to pursue is to extend this immunity to the surety. By so doing, the full effect of the purpose of this public policy will be preserved."

Additionally, in that the bonds herein are only required of probate and juvenile judges, as opposed to most other Ohio judges, because of their ministerial, clerical duties, it would appear that extension of judicial immunity of probate judges for acts in their judicial, rather than clerical, capacity to sureties of probate judges would conform to the relevant statutes and law involved.

Accordingly, in that the law herein afforded "other methods" for relief to appellant, *e.g.*, appeal, and sureties would be able, in accordance with the Restatement, to raise the defense of judicial immunity, it is apparent that such defense, for public policy and other reasons, is not a defense personal to the principal analogous to the other personal defenses of bankruptcy, infancy, and incapacity.

With regard to appellant's argument that such holding would render the bond requirement of R.C. 2101.03 meaningless, we note that sureties would still be liable for the probate judge's misfeasance, malfeasance, or nonfeasance with respect to ministerial clerical duties in those instances where the probate judge acts as his own clerk and, additionally, the judge will still be liable for acts outside his jurisdiction. Furthermore, actions against both the principal and surety will lie when the probate judge fails to faithfully pay over all moneys received by him in his official capacity. For the foregoing reasons, the trial court did not err in dismissing appellee and did not err in overruling appellant's Civ. R. 59(A)(7) motion for a new trial in that the judgment of dismissal was not contrary to law. Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

GREY, P.J., and ABELE, J., concur.