OPINION
{¶ 1} State of Ohio, The Industrial Commission of Ohio/Bureau of Workers' Compensation ("BWC"), plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court granted the motion for summary judgment of Federal Insurance Company ("Federal"), defendant-appellee, and denied the motion for summary judgment of the BWC.
 {¶ 2} From 1973 to 1985, Copperweld Steel Company ("Copperweld") was a self-insured employer for purposes of the Ohio Workers' Compensation program. During this time, Federal sold 12 surety bonds to Copperweld, which provided for payments by Federal to the BWC in the event Copperweld ever defaulted on its obligations as a self-insured employer. Copperweld and Federal also executed indemnity agreements, in which Copperweld agreed to indemnify Federal for any payments associated with the BWC's execution of the bonds.
 {¶ 3} On November 22, 1993, Copperweld filed a "Chapter 11" bankruptcy petition in federal court, and the court established April 20, 1994, as the date before which all creditors' claims must be filed or be forever barred. After the filing, Copperweld continued to operate as a "debtor-in-possession" while it attempted to reorganize. After having rejected two reorganization plans that would have allowed Copperweld to remain an ongoing concern, a plan to liquidate Copperweld's assets was approved in September 1995, to be effective October 11, 1995. A liquidation trustee was appointed to liquidate Copperweld's assets pursuant to the plan, and the liquidation trustee informed the BWC that it would cease paying its self-insured workers' compensation claims. On October 11, 1995, Copperweld stopped paying its self-insured workers' compensation claims as planned. On October 17, 1995, the BWC filed a proof of claim and request for allowance of administrative expense in the bankruptcy court based upon Copperweld's unpaid pre-petition and post-petition obligations. The liquidation trustee objected to the BWC's claim on several grounds, including that the claim was untimely, the claim was not entitled to high priority, and the amount claimed was inflated.
 {¶ 4} On July 1, 1996, the BWC entered into a settlement agreement with "CSC, Ltd.," "Hamlin Holdings, Inc.," and "The Liquidation Trust of CSC Industries, Inc. and Copperweld Steel Company (the `Liquidation Trust'), of which Kathryn A. Belfance is Trustee (the `Trustee'). (CSC Industries, Inc. and Copperweld Steel Company shall hereinafter be referred to as the `Debtors.')[.]" CSC, Ltd. and Hamlin Holdings, Inc. were the purchasers of Copperweld's assets. The settlement agreement provided for a payment of $2 million from the liquidation trust to the BWC in exchange for a release of claims. The bankruptcy court approved the settlement agreement on July 8, 1996. It is the terms of the release in the settlement agreement that are at the heart of the current matter.
 {¶ 5} On July 17, 1996, the BWC made a demand upon Federal for reimbursement of the amounts paid by the BWC for Copperweld's workers' compensation claims covered by Federal's surety bonds. Federal then made a demand upon Copperweld and filed a proof of claim in Copperweld's bankruptcy proceeding. The liquidation trustee objected to Federal's claim, and the bankruptcy court sustained the objection on July 7, 1997. The court found that Federal's claim was contingent, as Federal had paid nothing to the BWC. Another independent ground was also cited by the bankruptcy court. The court held it was a matter of Ohio law that a surety has no obligation if its principal, in turn, has no obligation attaching to the surety's promise. The court stated that the terms of the settlement agreement and the agreed order unequivocally stated that the BWC waived and released all pre-petition claims and requests for payment of administrative expenses that the BWC had or could have had against the debtors or the liquidation trust in the bankruptcy estate. Thus, the court concluded, Federal's principal, Copperweld, had no obligation to which Federal's suretyship undertaking could attach. However, on September 16, 1997, pursuant to a motion for rehearing filed by the BWC, the bankruptcy court issued another order, in which it indicated that BWC's contractual or other claims against Federal were not before the court, and the discussion regarding Ohio suretyship law dealt only with the court's view as to why Federal's claim could not be maintained against Copperweld's estate.
 {¶ 6} On June 6, 2002, the BWC filed the present action against Federal, as Copperweld's surety, seeking to recover the amounts it paid for workers' compensation claims on behalf of Copperweld and covered by the surety bonds; interest on those amounts; and expenses. Both Federal and the BWC filed motions for summary judgment. On November 24, 2004, the trial court issued a decision and entry granting Federal's motion for summary judgment and denying the BWC's motion for summary judgment. The trial court found that the BWC, via the settlement agreement, released all claims that it may have had against Copperweld with regard to Copperweld's workers' compensation liabilities. The trial court concluded that, because Copperweld had no obligation to the BWC for any pre-petition or post-petition claims, pursuant to the settlement agreement, Federal, as surety for the debtor Copperweld, had no obligation to the BWC. The BWC has appealed the judgment of the trial court, asserting the following three assignments of error:
1. The trial court erred in overruling Appellant's Motion for Summary Judgment where Appellant proved there was no genuine issue as to any material fact and Appellant was entitled to judgment as a matter of law.
2. The trial court erred in granting Appellee Summary Judgment where Appellant demonstrated that there were genuine issues of fact as to the defenses asserted by Appellee and Appellee was not entitled to judgment as a matter of law.
3. The trial court erred in finding Appellee had derivative rights under a bankruptcy Settlement Agreement to which neither Appellee nor its surety-principal were a party, and which did not deal with the obligations of the surety-principal outside of the bankruptcy case.
 {¶ 7} We first note that the BWC lists the above three assignments of error in its statement of assignments of error presented for review but fails to present a separate argument containing its contentions with respect to each assignment of error, in contravention of App.R. 16(A)(7). This court may disregard an assignment of error presented for review if the party raising it fails to argue the assignment separately in the brief. See App.R. 12(A)(2). Pursuant to App.R. 12(A)(1)(b), this court is required to determine the appeal based upon the assignments of error set forth in the briefs under App.R. 16 and we sustain or overrule only assignments of error and not mere arguments. Nevertheless, this court will address the merits of the case. However, we will address all of the assignments of error together, as the arguments contained in the argument section of the brief could apply generally to all three assignments of error.
 {¶ 8} When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. Franks v. The Lima News (1996),109 Ohio App.3d 408. Civ.R. 56(C) provides that, before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to the non-moving party. State ex rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. Franks.
 {¶ 9} The present case hinges on Ohio surety-principal law and the language of the settlement agreement filed in the bankruptcy court. Suretyship is the contractual relation whereby one person, the surety, agrees to answer for the debt, default, or miscarriage of another, the principal, with the surety generally being primarily and jointly liable with the principal debtor. Hopkins v. INA Underwriters Ins. Co. (1988),44 Ohio App.3d 186, 188. Because the surety's obligation is derived from that of the principal, the liability of the surety is ordinarily measured by the liability of the principal. Id. at 188-189. As a general rule, a surety on a payment bond is not liable unless the principal is and, therefore, may plead any defense available to the principal, with the exception of defenses that are purely personal to a principal, including bankruptcy. Id. at 189. Further, the obligations and defenses of the principal and surety on a payment bond should be coextensive and concurrent. ThomasSteel, Inc. v. Wilson Bennett, Inc. (1998), 127 Ohio App.3d 96,107.
 {¶ 10} The settlement agreement at issue in the current case provides, in pertinent part:
The parties hereto, wishing to resolve all issues arising from the Liquidation Trustee's Objection To Amended Request for Payment of Expenses of Administration and Proof of Claim Filed by the State of Ohio, Bureau of Workers' Compensation, the Motion to Intervene of CSC, Ltd., and Hamlin Holdings, Inc., and the related litigation, hereby agrees as follows:
1. The parties to this Settlement Agreement (collectively, the "Parties") are the following:
a. The State of Ohio, Bureau of Workers' Compensation (the" Bureau")
b. CSC, Ltd.
c. Hamlin Holdings, Inc.
d. The Liquidation Trust of CSC Industries, Inc. and Copperweld Steel Company (the "Liquidation Trust"), of which Kathryn A. Belfance is Trustee (the "Trustee"). (CSC Industries, Inc. and Copperweld Steel Company shall hereinafter be referred to as the "Debtors.")
2. The Bureau hereby waives and releases all prepetition claims and all requests for payment of administrative expense that the Bureau has brought or could have brought against the Debtors or the Liquidation Trust in the bankruptcy case of In re CSCIndustries, Inc. and Copperweld Steel Company, Chapter 11 Case Nos. 93-41898 and 93-51899 (the "Bankruptcy Case"), in the United States Bankruptcy Court, Northern District of Ohio (the "Bankruptcy Court") except as follows: the Bureau shall have an allowed administrative expense in the amount of $2 million, which shall be paid to the Bureau in full without any setoff or deduction. Payment in full shall be made to the Bureau on the Settlement Effective Date, as defined infra.
* * *
9. The Parties hereby release each other, their agents, officers, officials, attorneys, successors and assigns, from any claims, demands, causes of action, actions, offsets, rights, liabilities, suits, damages, costs, and expenses of every kind, nature, and description, whether in law or at equity, whether known or unknown, and whether accrued or to accrue, arising out of any of the following: (a) the claims of the Bureau against either the Debtors or the Trust, (b) the prepetition or postpetition payments of the Debtors in regard to their workers' compensation liabilities[,] (c) any rights of CSC, Ltd. or Hamlin Holdings, Inc. against the Liquidation Trust in the nature of estoppel, earmarking, or reimbursement, arising out of the treatment of the Bureau in the Bankruptcy Case, and (d) the treatment by the Bureau of CSC Ltd. through the Settlement Effective Date, as defined supra.
 {¶ 11} Given the extremely broad release in paragraph 9 granted by the BWC to the "Debtors" for any claims and pre-petition or post-petition payments in regard to their workers' compensation liabilities, and the well-established Ohio surety law principles, the main issue that must be addressed in the present case is whether the "Debtors" referred to in paragraph 9 include the same Copperweld entity for which Federal was a surety. Federal asserts that the agreement clearly defines one of the "Debtors" as "Copperweld," pointing to paragraph 1(d), which states "CSC Industries, Inc. and Copperweld Steel Company shall hereinafter be referred to as the `Debtors.'" The trial court agreed with Federal and found that the Copperweld released in paragraph 9 was the same Copperweld for which Federal was a surety, as evidenced by paragraph 1(d).
 {¶ 12} On this point, the BWC argues that bankruptcy proceedings create separate legal entities that are distinct from the legal entity that filed the bankruptcy case. Thus, as applied to the present case, the BWC contends that paragraph 9 released some other Copperweld entity, which was a legal fiction created by bankruptcy law, and not the underlying Copperweld corporation that filed the bankruptcy, which was the Copperweld for whom Federal was a surety. Therefore, the BWC contends, because the release in paragraph 9 did not release the Copperweld that was the principal on the surety agreements, Federal cannot employ the derivative protections for a surety that arise under Ohio suretyship laws when the principal has been released.
 {¶ 13} In support of this theory, the BWC presents several arguments. BWC first contends that there is an ongoing distinction created in the bankruptcy code between the "person" concerning which a bankruptcy case is commenced and that person's role as "debtor." However, the bankruptcy code would seem to draw no such distinction according to its definition of those terms. A "debtor" is defined as being the "person" concerning which a bankruptcy case has been commenced. Section 101(13), Title 11, U.S.Code. A "person" is defined to include a corporation. Section 101(41), Title 11, U.S.Code. Thus, from these definitions alone, there is no distinction between the corporation that filed the bankruptcy and the "debtor." Despite the BWC's claim that a sort of separate legal entity of "debtor" is created upon the filing of a bankruptcy that is separate from the underlying filer, the above definitions do not corroborate this theory. Section 101(13), Title 11, U.S. Code indicates the term "debtor" is merely another name for the entity whom the bankruptcy concerns. Given these definitions, the Copperweld referred to as a "Debtor" in paragraph 1(d) of the settlement agreement would be the same Copperweld as the corporate entity that filed the petition; in other words, the same Copperweld for whom Federal was a surety. The BWC presents no authority that indicates the "debtor" and pre-bankruptcy corporation are considered distinct entities. Thus, this argument does not support the BWC's contention.
 {¶ 14} The BWC also argues that the Copperweld entity released by paragraph 9 was the bankruptcy "estate" only, and not the underlying Copperweld corporation that filed the bankruptcy and executed the surety agreement with Federal. The BWC claims that the "estate" is a separate legal entity for purposes of bankruptcy, and, therefore, the underlying Copperweld corporation was not released by paragraph 9. It is true that, in bankruptcy, the estate is created upon the filing of the bankruptcy petition. Section 541(a), Title 11, U.S. Code (the commencement of a case creates an estate). This estate acquires title to most property interests formerly held by the debtor. See id. Further, it is true that most authorities agree that "debtor" and "estate" have different meanings in the bankruptcy code and are not interchangeable. See Section 101(13), Title 11, U.S. Code (defining debtor as the person concerning which a case under the bankruptcy code has been commenced) and Section 541, Title 11, U.S. Code (specifying the property of which the estate is comprised). This same line of authorities finds that the bankruptcy estate created upon commencement of a bankruptcy case is a distinct legal entity that exists apart from the debtor. Inre Dow Corning Corp. (2001), 270 B.R. 393, 398.
 {¶ 15} However, in the present case, nowhere in the agreement did the BWC state that it was merely releasing the "estate" of the "Debtors," i.e., the underlying pre-bankruptcy Copperweld corporation. Paragraphs 2 and 9 indicate only that the BWC was releasing the "Debtors." The case law and bankruptcy code sections cited above that provide that the "estate" and "debtors" are different entities undermines the BWC's claim that its release of the "Debtors" was meant to be a release of only the "estate" of the "Debtors." In fact, at the time of the agreement, the "estate" was not in the possession of the "Debtors." A reorganization plan providing for liquidation had already been approved and confirmed by the bankruptcy court when the parties entered into the settlement agreement. The plan of reorganization provided that the liquidation trust was the successor in interest to and representative of the estate. Thus, as of the date of approval of the plan to liquidate assets, the estate had vested in the liquidation trustee, and the "Debtors" did not possess the estate. Indeed, the BWC specifically released the liquidation trust separately from the "Debtors," which could have only been intended to release the estate that was under the control of the liquidation trust at that time. If the BWC intended only to release claims assertable against the bankruptcy estate, which it explicitly contends, the BWC fails to explain why it included a release of "Debtors" when the liquidation plan was abundantly clear that the estate was possessed by the liquidation trust, not the "Debtors." Accordingly, any contention by the BWC that it intended only to release the "estate" from any further claims when it released the "Debtors" is unpersuasive. For these reasons, we find the BWC has failed to show that the "Debtor" referred to in paragraph 9 is not the same Copperweld entity for which Federal was a surety.
 {¶ 16} The BWC's next argument is that the "Debtor" for whom it waived the obligations could not have been Copperweld, the underlying corporation, because Copperweld, the underlying corporation, was not a party to the settlement agreement. The BWC points out that paragraph 1(d) indicates that the "liquidation trust" for Copperweld was a party, not Copperweld, the underlying corporate entity, and that Copperweld is only mentioned as being a "Debtor" and not a party to the agreement. The BWC also asserts that paragraph 9 of the agreement states that "the parties" release "each other," which would not include Copperweld, the underlying corporation, the entity for which Federal was a surety.
 {¶ 17} However, whether Copperweld, the underlying corporation, was a party to the contract between the BWC and the liquidation trust is immaterial. "A third-party beneficiary is one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise." Berge v. ColumbusCommunity Cable Access (1999), 136 Ohio App.3d 281, 303. A third person not a party to the contract has enforceable rights under the contract when the contracting parties intended to create such rights. Laverick v. Children's Hosp. Medical Ctr. of Akron
(1988), 43 Ohio App.3d 201, 204. In Hill v. Sonitrol ofSouthwestern Ohio, Inc. (1988), 36 Ohio St.3d 36, 40, the Supreme Court of Ohio adopted an "intent to benefit" test to determine whether a party is an intended, or merely an incidental, third-party beneficiary. Under this analysis, if the promisee intends that a third party should benefit from the contract, then that third party is an "intended beneficiary" who has enforceable rights under the contract. Id. "If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an `incidental beneficiary,' who has no enforceable rights under the contract." Id. In Hill, the Ohio Supreme Court adopted Section 302 of the Restatement of the Law 2d, Contracts (1981) 439-440 ("Section 302"), which provides that a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. Section 302, at 439-440.
 {¶ 18} Section 302 provides that a court should consider the language of the contract and the surrounding circumstances to determine the parties' intentions. See, also, Anderson v.Olmsted Utility Equip., Inc. (1991), 60 Ohio St.3d 124, 129-130
(the Supreme Court of Ohio examined the contract language and trial testimony regarding the purpose of the contract). The determination of the parties' intentions is a factual inquiry. A reviewing court must presume that the trial court's interpretation of the agreement regarding the parties' intentions is correct, and that determination will be upheld if supported by some competent, credible evidence. See Reida v. Thermal Seal,Inc., Franklin App. No. 02AP-308, 2002-Ohio-6968.
 {¶ 19} In the present case, a reasonable reading of the language of the settlement agreement demonstrates that both the liquidation trustee and the BWC could have intended that Copperweld should benefit from the contract. As we already found above, because Copperweld, the corporate entity, was defined as a "debtor," and because the parties stated that they were releasing the "Debtors," the settlement agreement expressly included language that indicated their intent to confer a benefit upon Copperweld. Further, the circumstances indicate that the promisee intended to give the beneficiary the benefit of the promised performance. See Section 302, at 439-440. The liquidation trustee, who was the promisee of the BWC's promise to release its claims, indicated in its objection to Federal's claim filed in the bankruptcy court that it believed the BWC released Copperweld from all of its obligations owed to the BWC. Therefore, even if Copperweld, the corporate entity, was not a party to the settlement agreement between the BWC and the liquidation trustee, it could still be a beneficiary under the contract. Accordingly, pursuant to Ohio surety law, because Copperweld could have enforced the BWC's waiver and release under the settlement agreement, Federal could plead the same defense as Copperweld, the principal under the surety agreement with Federal.
 {¶ 20} The BWC next argues that the releases and subject matter of the releases in the settlement agreement were expressly and carefully defined, and did not include the obligations of Copperweld, the corporate entity, outside of the bankruptcy case. The BWC points to the language in paragraph 2 of the settlement agreement that provides: "The Bureau hereby waives and releases all prepetition claims and all requests for payment of administrative expense that the Bureau has brought or could have brought against the Debtors or the Liquidation Trust in thebankruptcy case[.]" (Emphasis added.) The BWC argues that the "in the bankruptcy case" language demonstrates that only the bankruptcy claims and administrative expenses, in the context of and for the purposes of the bankruptcy case, were being released.
 {¶ 21} Federal counters that the plain language of paragraph 2 sweeps into the waiver and release any claim the BWC had against Copperweld, the underlying corporation, prior to the bankruptcy filing. Federal argues that, because the BWC "release[ed] all prepetition claims * * * against the Debtors," and because all of the BWC's claims against Copperweld existed on the bankruptcy petition date, this express release included every claim that the BWC had against Copperweld that underlies the BWC's complaint against Federal in the present action. Federal points out that these pre-petition claims against Copperweld, the underlying corporation, must necessarily be included in the language of the paragraph 2 release because they were claims the BWC either "brought or could have brought" against the debtor "in the bankruptcy case."
 {¶ 22} The interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law subject to de novo review on appeal. Long Beach Assn.,Inc. v. Jones (1998), 82 Ohio St.3d 574, 576. If a contract is unambiguous, its interpretation is a matter of law unaccompanied by the need for factual determinations. Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, 246. Contract terms are ambiguous only if they can be reasonably understood in more than one sense. Mills Creeks Condominium Assoc. v. Kleinholz (Oct. 2, 1991), Lorain App. No. 91CA005025. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander, paragraph two of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v.Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 23} In the present case, we agree with Federal's reading of paragraph 2. The plain language of the pertinent passage clearly indicates a waiver of every claim the BWC "brought or could have brought" against Copperweld, the underlying corporation. Any claim that was brought or could have been brought by the BWC must necessarily include all of the obligations of Copperweld to the BWC for which Federal was a surety. Though the BWC seems to counter this later finding by contending that "claim," as used in paragraph 2, is limited under bankruptcy law to mean a mechanism for payment in the estate's distribution scheme, which it contends is more limited than those pre-petition "debts" of the underlying corporate entity, we find this distinction irrelevant given the BWC waived not only claims that were brought, which would be paid out pursuant to the estate's distribution scheme, but also any claim that it "could have brought." By waiving all claims that could have been brought, the BWC released all pre-petition "debts" against Copperweld, the underlying corporation, that could have constituted a claim in the bankruptcy proceeding, as well as any "claims" for payment from the estate of Copperweld that were actually brought in the bankruptcy proceeding. Thus, because Federal was a surety for Copperweld with regard to its pre-petition debts to the BWC that could have been the subject of claims in the bankruptcy proceeding, and paragraph 2 of the settlement agreement demonstrates that the parties intended to release Copperweld, the underlying corporation, from those pre-petition debts it owed the BWC, the BWC's action against Federal on these debts must fail.
 {¶ 24} The BWC points to several pieces of extrinsic evidence to further argue that "debtor" waived in paragraphs 2 and 9 was the estate of Copperweld and not Copperweld the underlying corporation. The five pieces of extrinsic evidence mentioned by the BWC are: (1) the agreed order approving the settlement agreement; (2) the bankruptcy court's order sustaining the trustee's objection to Federal's claim; (3) the bankruptcy court's order denying the BWC's motion for a rehearing on the order sustaining the trustee's objection to Federal's claim; (4) the liquidation trustee's motion for approval of the settlement agreement filed in the bankruptcy court; and (5) the liquidation trustee's objection to Federal's claim in bankruptcy court. However, extrinsic evidence may only be used where the meaning of the term or phrase cannot be determined solely from the four corners of the document as a result of an ambiguity. See Grahamv. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313. In the present case, we have found the meaning of "Debtors," as used in the settlement agreement, is reasonably susceptible of only one interpretation, and it appears from the evidence that reasonable minds can come to but one conclusion on this issue. Therefore, we may not resort to the use of any of these extrinsic documents in order to create an ambiguity that does not exist in the plain language of the settlement agreement.
 {¶ 25} For these reasons, we find the BWC has failed to demonstrate that there were any genuine issues of material fact as to whether it released all claims for payment of workers' compensation liabilities it had against the Copperweld, the underlying corporation, in paragraphs 2 and 9 of the settlement agreement. Because the BWC released Copperweld, the underlying corporation, from these payments, Federal, as Copperweld's surety, cannot be liable to the BWC for these payments pursuant to Ohio surety law. As there remain no genuine issues of material fact, summary judgment was appropriate.
 {¶ 26} We also note Federal raises the doctrine of laches as a defense to any payment it may owe to the BWC. However, as we have found summary judgment in Federal's favor was appropriate, any application of the doctrine of laches to the present case is moot. Therefore, the BWC's first, second, and third assignments of error are overruled.
 {¶ 27} Accordingly, the BWC's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Klatt, JJ., concur.