THE STATE SAVINGS AND TRUST CO. *v.* GRADY ET AL.

*Suretyship—Deception in inducement defeats recovery against surety—Negotiable instruments—Evidence necessary to sustain defense that signatures obtained by fraud.*

1. Where a creditor holding certain obligations of his debtor requires the latter to furnish sureties thereon, and the debtor, with the knowledge of the creditor, by deception induces a third party to become such surety, no right of action on the new obligation can be maintained against the surety.

2. In a case at law a defense that signatures to a promissory note were obtained by fraud is established by the greater weight of the evidence.

(Decided March 29, 1923.)

ERROR: Court of Appeals for Summit county.

*Messrs. Mather, Nesbit & Willkie,* for plaintiff in error.

*Messrs. Rockwell & Grant,* and *Messrs. Anderson, Ormsby & Kennedy,* for defendants in error.

MAUCK, J. On October 24, 1921, the State Savings & Trust Company, the payee of a cognovit note in the sum of $20,195.73, took a judgment thereon by confession against the makers in the Court of Common Pleas of Summit county. Thereafter Ernest G. Grady, Stephen T. Plancsak and I. F. Fox filed motions to open up said judgment that they might be permitted to make their defenses to such note. These motions were sustained and answers filed by the parties mentioned.

[1] Principal and Surety, 32 Cyc. pp. 62, 65; [2] Bills and Notes, 8 C. J. § 1361 (Anno.); Evidence, 23 C. J. § 1748.

Grady and Plancsak in their answer pleaded, first, that the note was wholly without consideration. As a second defense they pleaded that prior to March 10, 1921, the date upon which the note was signed, Ben H. Pryor, the principal debtor on the note, had made and delivered to Christopher E. Albright a large number of notes secured by chattel mortgages on automobiles; that Albright endorsed those notes and assigned them to the plaintiff; that Pryor had sold some of said mortgaged automobiles in violation of Section 12476, General Code; that the plaintiff, having knowledge of these criminal acts, had threatened Pryor with criminal prosecution therefor unless Pryor would furnish satisfactory signers as accommodation makers upon the note in controversy; that Pryor, proceeding under said threats, and being coerced thereby, procured the signatures of the answering defendants to said note by false and fraudulent representations; and that these false and fraudulent representations were made with the knowledge of the plaintiff. The third defense was an elaboration of the second defense, alleging somewhat more specifically the alleged fraudulent representations made to the answering defendants, the knowledge and consent of the bank thereto, and some other matters not necessary now to be referred to.

The answer of the defendant Fox was substantially the same.

Upon the issues so drawn trial was had to a jury, resulting in a verdict for the defendants. To the judgment following this verdict the plaintiff prosecutes error to this court.

We have examined the very extensive record in

the case and find that there is testimony tending
to show that Pryor and Albright were engaged in
selling automobiles, Pryor being an employe or
sub-agent of Albright. In selling the automobiles
the exigencies of the trade required the vendors
to take over many second-hand cars. Pryor opened
up a separate establishment in which he was
handling these, and perhaps other, used automo-
biles. Pryor would make his note to Albright,
secured by a chattel mortgage on a given machine,
and Albright would discount the note with the
plaintiff bank. The bank seemed to have no
knowledge of Pryor's financial responsibility and
seemed to make no effort to ascertain the value
of the chattels thus mortgaged or even the title
of Pryor to the cars he was mortgaging. The bank
seemed to be satisfied with Albright's endorsement
and the fact that it was getting seven per cent.
straight discount with a three per cent. commis-
sion or bonus upon each renewal, the several notes
running for ninety days. It was probably early
in March, 1921, that the officers of the bank, then
holding forty-one notes, aggregating more than
$30,000, undertook to check up the mortgaged
automobiles. The officers of the bank then dis-
covered that Pryor had sold a number of the mort-
gaged automobiles upon which the bank was sup-
posed to have liens aggregating about $12,000.
The testimony sharply differs from this time on,
but it is shown that the officers of the bank at
that time insisted not only that Pryor make good
the notes whose security had been impaired by
sale of the mortgaged machines, but also that he
give other security for that part of his indebted

ness for which the security had not been impaired. Pryor thereupon gave a second mortgage upon his real estate in the sum of $12,000, which was acceptable to the bank and covered that part of the indebtedness that had been left unsecured by Pryor disposing of the mortgaged machines. The testimony tends to show that the officers of the bank were threatening Pryor with prosecution unless he gave personal security for the rest of the indebtedness. The bank thereupon prepared the note in question, having first carefully calculated the interest up to March 10, added thereto six months interest, and with a *sang-froid* that excites our wonder added $631 commission or bonus for making the loan. Pryor testifies that he went to Grady, Plancsak and Fox and made the false representations set up in the answer in order to induce these parties to sign this obligation to the bank, and the record beyond any dispute shows that these parties were induced to sign the note by these false representations. As between Pryor and these accommodation makers of the note there can be no doubt that they were defrauded as charged.

Pryor testifies that he made the representations complained of at the instance of and with the knowledge of the officers of the bank. These officers denied it. Pryor, it is true, is discredited by the circumstances. He was brought from jail to testify before the jury. On the other hand, the officers of the bank are contradicted in minor, but important, matters by a number of witnesses. We would not be inclined to disturb the verdict of the jury if that verdict were necessarily predicated upon the connivance of the officers of the bank in the undoubtedly false representations that Pryor

made to his friends, the defendants in error. If the bank consented to Pryor's conduct, the sureties, of course, are not bound.

"It is a well settled rule of law that if a creditor induces his surety or guarantor to enter into the contract of suretyship or guaranty by any fraudulent concealment or misrepresentation of material facts that the surety or guarantor will be released."

Above is the language of Mr. Freeman in his note to *Fassnacht* v. *Emsing-Gagen Co.*, 63 Am. St. Rep., 327.

We think that in the instant case the rule might go further. Taking into consideration the fact that contemporaneously with the making of the note sued upon the bank was taking a mortgage for all the equity that Pryor had in his real estate, and that the bank knew that at least some of the signers of the new note could have no knowledge of that mortgage, either actual or constructive, and that the bank was padding Pryor's indebtedness with an unearned and unconscionable commission, the bank might have been held to even a higher duty. Such higher duty has thus been explained in 21 Ruling Case Law, at page 989:

"Whether he (the payee) is bound before accepting the undertaking of the surety voluntarily to inform him of facts within his knowledge which increase the risk of the undertaking depends on the circumstances of the case. The rule seems to be that if he knows or has good grounds for believing that the surety is being deceived or misled, or that he was induced to enter into the contract in ignorance of facts materially increasing the risk, of which he has knowledge, and he has an

opportunity before accepting his undertaking to inform him of such facts, good faith and fair dealing demand that he should make such disclosures to him; and if he accepts the contract without doing so, the surety may afterward avoid it, though the failure to disclose such facts was not willful or intentional. The test as to whether a disclosure should be voluntarily made by the creditor to one who is about to become surety for a debt is, it has been said, whether there is a contract between the debtor and the creditor to the effect that the position of the surety shall be different from that which he might expect.''

We conclude, therefore, that upon the second defense, that of fraudulent representations, the verdict of the jury, who observed the witnesses upon the stand, ought not be disturbed by a reviewing court as being contrary to the weight of the evidence.

The other defense was that the note was given, but that there was no consideration therefor. The consideration claimed by the plaintiff was that the note in suit was given in consideration of the former indebtedness of Pryor to the bank, and cancellation of the notes and chattel mortgages held by the bank on March 10, 1921. As a matter of fact, the bank did not surrender the chattel mortgage notes. It kept physical possession of them and peremptorily refused to give them up after the new obligation was given. It made collections thereon and applied the same to the new note. It did this because it claims it was bound to do so under some collateral agreement between the bank and Albright. This is a question which had

to be determined from the evidence, and the jury would have been justified in finding that the bank had retained the old obligations and the old securities, as well as the new, and that no consideration in fact existed for the new note. If the verdict of the jury was predicated upon that defense we would not disturb it as being unsupported by the evidence.

Plaintiff in error complains that the trial court permitted the several fraudulent statements made by Pryor to Grady, Plancsak and Fox individually to inure to the benefit of each and all of these parties. We see no error in this. It was impossible that the precise language used by Pryor to each of these parties, whom he interviewed separately, would be identical. He was fabricating a story that would appeal to his prospective victims severally. Doubtless the fact that he had been able to secure the first one assisted him in securing the second, and the fact that he had secured the first two beyond question exerted a strong influence toward securing the third. If any or all of these solicitations were part of a scheme of which the bank had knowledge and to which it had given its consent, testimony relating to any one of the parties was competent and could be availed of by either of the other two.

It is further complained that the court charged that a preponderance of the evidence was all that was necessary for the defendants to avail themselves of the defense that their signatures had been procured by false and fraudulent representations. An erroneous instruction upon this one defense would not warrant a reversal, in view of this court's conclusion that the verdict might properly

have been predicated upon the defense that there
was a want of consideration. See *Bleecher* v. *Dunlap*, 52 Ohio St., 64, and *Jones* v. *Erie Railroad Co.*,
106 Ohio St., 408. The charge, however, was not
erroneous.

There was much confusion in the earlier cases
regarding the quantum of proof in civil actions
where a crime or some moral obliquity was pleaded. The courts of the various states have contributed a variety of opinions. 12 Ruling Case
Law, 436; note to *Lepley* v. *Anderson*, 33 L. R. A.,
(N. S.), 837. In an early case of this state it was
decided that where the facts pleaded in defense
constituted an indictable crime the required proof
was that of a reasonable doubt. *Lexington Fire,
Life & Marine Ins. Co.* v. *Paver*, 16 Ohio, 324.
As late as *Strader* v. *Mullane & Johnson*, 17 Ohio
St., 624, there is a dictum that if the plea amounts
to the charging of a criminal offense it must be
established beyond a reasonable doubt, but the
actual holding of the court is that only a preponderance of the evidence is required where fraud
is pleaded and such fraud does not constitute an
indictable offense. In *Jones, Stranathan & Co.* v.
*Greaves*, 26 Ohio St., 2, the syllabus reads:

"On the trial of a civil action wherein the claim
or defense is based on an alleged fraud, the issue
may be determined in accordance with the preponderance or weight of evidence, whether the
facts constituting the alleged fraud do, or do not,
amount to an indictable offense."

This rule was followed in *Lyon* v. *Fleahmann*,
34 Ohio St., 151, *Shaul* v. *Norman*, 34 Ohio St.,
157, and *Bell* v. *McGinness*, 40 Ohio St., 204.

The cases cited dealt only with the two alterna-

tive degrees of proof, that of beyond a reasonable doubt, on the one hand, and that by the preponderance of the evidence, on the other. They did not consider what Judge Nichols, in *Merrick v. Ditzler,* 91 Ohio St., 256, 261, calls the now "well-recognized intermediate degree of proof required in a certain class of cases," to wit, "clear and convincing." In that case the former Chief Justice indicates his view that among other classes of cases in which this intermediate degree of proof is required are those where the charge of fraud is involved. This expression of the learned judge is merely illustrative and, as we view it, is insufficient to warrant us in holding that it was the intention of the court in the *Merrick case* to overrule the earlier decisions holding that in civil *jury* cases either a fraud or a criminal offense may be established defensively by a preponderance of the evidence.

Furthermore, it is to be noted that the fifth special instruction prepared by the plaintiff and given by the court before argument recognizes the quantum of proof in the instant case to be a mere preponderance of the evidence. The court was, therefore, invited by the plaintiff to apply that degree of proof to the defense of fraudulent representations. If the instruction was erroneous, it follows, therefore, that the plaintiff in error is in no position to complain of it.

It is also argued that the court should have instructed them more fully upon some features of the case that were discussed. We do not find any serious omissions in the instructions, and the plaintiff evidently asked no additional or further

instructions, nor in any way called the court's attention to any omission, and it will not now be heard to complain of the instructions in that respect. In a record of this length there are bound to be some fugitive mistakes, but the record as a whole is most creditable to the judge who tried the case.

We find that substantial justice has been done, and the judgment is affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., and SAYRE, J., concur.

Judges of the Fourth Appellate District, sitting in place of Judges PARDEE, WASHBURN and FUNK, of the Ninth Appellate District.