**MANOR CARE NURSING AND REHABILITATION CENTER, Appellee,**

v.

**THOMAS et al., Appellants.**

[Cite as *Manor Care Nursing & Rehab. Ctr. v. Thomas* (1997), 123 Ohio App.3d 481.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960802.

Decided Sept. 26, 1997.

482

**484** ·

*Kohnen & Patton* and *Joseph L. Dilts*, for appellee.

*Ruppert, Bronson, Chicarelli & Smith Co., L.P.A.*, and *Rupert E. Ruppert*, for appellants.

PAINTER, Presiding Judge.

Bonnie Thomas suffered severe injuries in an accident in July 1993 and hired Rupert E. Ruppert, of the law firm Ruppert, Bronson, Chicarelli & Smith Co., L.P.A. ("the firm"), to represent her. Thomas, Ruppert, and the firm are all the appellants.

Thomas resided at the Manor Care Nursing & Rehabilitation Center ("Manor Care") during part of her recovery. She signed a contract for admission upon her arrival at Manor Care. On August 3, 1993, Ruppert sent Manor Care a letter stating in part: "It is my understanding that Blue Cross/Blue Shield may only pay a portion of her costs for care at your facility. Please be advised that our office is hereby guaranteeing that before any funds are disbursed to Bonnie Thomas or her husband, we will pay any balance due and owing to Manor [Care] out of any settlement proceeds or jury demand. In other words, Mr. and Mrs. Thomas will receive absolutely no funds until such time as your medical bills have been paid in full in the event there is any balance due and owing after insurance coverage."

Manor Care, the plaintiff-appellee, filed suit for breach of contract when Thomas's bill of $14,853.27 was not paid. Thomas, in her answer, averred that Manor Care negligently failed to submit precertification claims to Blue Cross/Blue Shield, fraudulently overbilled her, and fraudulently induced her to sign Manor Care's admission contract. Thomas also counterclaimed based on fraud.

Ruppert placed $20,000 from funds that were recovered for Thomas's injuries in a certificate of deposit in escrow until the dispute could be settled, and later petitioned the trial court to hold this money in escrow and to dismiss himself and the firm from the suit.

On May 31, 1996, Manor Care sent a request for admissions to Thomas, which was to be answered within twenty-eight days. Ruppert sent Thomas's responses, which were unsigned, to Manor Care via facsimile on June 27, 1996, and sent a signed copy on July 25, 1996.

On September 9, 1996, the trial court orally granted summary judgment for Manor Care. Apparently, a summary judgment hearing was held impromptu—at oral argument in this appeal, counsel for the defendants-appellants stated that the parties met that day for a case-scheduling conference. However, the transcript of the docket contains no entry showing that anything was to or did occur on that date. Further, the trial court had neither set a date for hearing the motion for summary judgment nor set a date on which the motion would be deemed submitted.

The trial court then denied the appellants' "motion for reconsideration" and motion to amend Thomas's responses to the request for admissions. On October 3, 1996, the trial court entered the summary judgment, ruling that Thomas had not responded to the request for admissions within twenty-eight days under Civ.R. 36(A), and therefore that all requested matters were deemed admitted. Further, the trial court concluded that (1) Manor Care was entitled to $14,853.27 as a matter of law; (2) Manor Care was entitled to prejudgment interest of $4,322.20 dating from October 1, 1996, when Thomas was discharged from Manor Care; (3) Ruppert's and the firm's motion for summary judgment was not well taken; and (4) the motion to deposit $20,000 in an interest-bearing account was moot.

In their first assignment of error, the appellants assert that the trial court erred in entering summary judgment against Thomas. This assignment centers on the trial court's ruling that Thomas's responses to the request for admissions were untimely. The appellants argue that (1) the trial court erred in deeming the matters requested by Manor Care admitted by Thomas; (2) the trial court abused its discretion in denying Thomas's motion to amend her responses to the request for admissions; and (3) the trial court erred in granting summary judgment on the basis of Manor Care's admission contract. We agree that the trial court wrongly granted summary judgment, but not for all reasons given by the appellants. We sustain the assignment.

Civ.R. 56(C) states in part: "The motion [for summary judgment] shall be served at least fourteen days before the time fixed for hearing. The adverse

party prior to the day of hearing may serve and file opposing affidavits." Here, though, the trial court never set a date for hearing. Also, the trial court never informed the parties when the motion would be considered submitted for decision. We do not see how a party can be cognizant of when it must file affidavits in opposition to a motion for summary judgment if a hearing on the motion is conducted without proper notice.

██ We stress that an oral hearing is not required on every summary judgment motion, regardless of whether a party has moved for a hearing.[1] But if a hearing is not set, the trial court must inform the nonmoving party of the date that the motion for summary judgment will be deemed submitted for resolution. See *Estep v. Insignia Mgt. Co.* (Mar. 26, 1997), Hamilton App. No. C–960092, unreported, 1997 WL 133441.[2] Without such a date, the nonmoving party has no idea of when the submission of affidavits in opposition to the motion is required.

█ Further, as noted in *Griffith v. Wackenhut Corp.*, our decision does not conflict with Hamilton County Court of Common Pleas Loc.R. 14(B), which requires that a memorandum in opposition to a motion for summary judgment be served within ten days from the date the motion for summary judgment is served. This local rule pertains only to memoranda and not to affidavits—the trial court must fix either a date for an oral hearing or a date for submission. Affidavits may be filed up to the day before the date of hearing or submission. See Civ.R. 56(C).

█ The trial court cannot properly decide a motion for summary judgment without first notifying the nonmoving party of the date of hearing or submission. If a date had been set in this case, the appellants could have timely filed Ruppert's affidavit, which explained that the responses to the admissions were originally sent without a signature because Thomas was out of town. And they could have timely filed the letter that Ruppert sent to Manor Care at the time explaining the situation and requesting a response if it posed a problem. Instead, the trial court prematurely granted summary judgment. This error was prejudicial to the appellants because they were forced to attempt to introduce this evidence through a "motion for reconsideration," which is a nullity in Ohio. See *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423

---

1. See, *e.g., Griffith v. Wackenhut Corp.* (July 6, 1988), Hamilton App. No. C–870836, unreported, 1988 WL 71609; *Ashworth v. Enon* (Oct. 18, 1995), Clark App. No. 95 CA 43, unreported, 1995 WL 614345; *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 13 O.O.3d 191, 392 N.E.2d 1316.

2. See, also, *Griffith v. Wackenhut Corp.; Gen. Motors Acceptance Corp. v. Stratton* (June 28, 1989), Highland App. No. 694, unreported, 1989 WL 74871; *Ashworth v. Enon.*

N.E.2d 1105, paragraph one of the syllabus; *Sparks v. Edingfield* (Mar. 28, 1997), Greene App. No. 96–CA–97, unreported, 1997 WL 156581.

 The trial court erred both by prematurely granting summary judgment without setting a date for hearing or submission and by deeming the matters requested by Manor Care admitted by Thomas. Obviously, the letter sent by Ruppert to opposing counsel, stating that his client was out of town and that the responses were thus being faxed unsigned, and asking opposing counsel to let him know whether that presented a problem, was sufficient to prevent the responses from being treated as admissions. The trial court thus abused its discretion in deeming the matters admitted on such a technical and unreasonable basis. Discovery, under the Ohio Rules of Civil Procedure, is to be conducted by counsel without involving the court. Was Ruppert required to ask the trial court for a formal extension of time when opposing counsel did not object to his letter? We think not. Law is, we hope, not practiced in such a sharp manner in this county.

 The trial court abused its discretion in deeming the matters in Manor Care's request admitted. Because the responses, and Ruppert's letter explaining their lateness, were filed at least one day before the date of hearing (because no date for hearing or submission was ever set), they were properly before the court. And we hold that the faxing of complete but unsigned copies, together with a letter asking opposing counsel's indulgence (which was not objected to by Manor Care), and the filing of a signed copy within a reasonable time thereafter were sufficient. Thus, the trial court erred in deeming the matters admitted. Without the admissions, the trial court could not grant judgment against Thomas. The first assignment of error is accordingly sustained.

In appellants' second assignment of error, they assert that the trial court erred in granting summary judgment against Ruppert and the firm and concluding that they personally guaranteed payment of Thomas's medical bills at Manor Care.

 "Suretyship is the contractual relation whereby one person, the surety, agrees to answer for the debt, default or miscarriage of another, the principal, with the surety generally being primarily and jointly liable with the principal." *Solon Family Physicians, Inc. v. Buckles* (1994), 96 Ohio App.3d 460, 463–464, 645 N.E.2d 150, 152, citing *Hopkins v. INA Underwriters Ins. Co.* (1988), 44 Ohio App.3d 186, 542 N.E.2d 679. The primary distinction between a surety and a guarantor is that a surety is primarily liable with a principal, whereas the liability of a guarantor is secondary and collateral if the principal does not perform. See *Teramar Corp. v. Rodier Corp.* (1987), 40 Ohio App.3d 39, 531 N.E.2d 721. The law requires an express agreement to create suretyship; it will not be implied. *Shiepis Clinic of Chiropractic Inc. v. Stevenson* (July 8, 1996), Stark App. No.1995CA00343, unreported, 1996 WL 488781, citing *Gholson*

*v. Savin* (1941), 137 Ohio St. 551, 19 O.O. 309, 31 N.E.2d 858. The examination of the precise wording of contractual language is crucial to a determination whether creation of a suretyship was intended.

The letter from Ruppert to Manor Care did not create a suretyship in which Ruppert and the firm unconditionally assumed responsibility for payment of the medical bills Thomas incurred at Manor Care. In the letter, Ruppert indicated to Manor Care that the firm would pay any balance due Manor Care *"out of any settlement proceeds or jury demand"* [3] before it disbursed any funds to Thomas. Thus, Ruppert and the firm assumed responsibility only for payment if a settlement were reached or funds were won through a lawsuit. Thus, if a settlement were reached or money received through a lawsuit, Ruppert and the firm were sureties for the hospital bill, up to the amount received through settlement or suit. The consideration running from Thomas to Ruppert and the firm was sufficient to support Ruppert's promise to pay Manor Care's bill. See *Medina Supply Co. v. Corrado* (1996), 116 Ohio App.3d 847, 689 N.E.2d 600, quoting *Buckles,* 96 Ohio App.3d at 464, 645 N.E.2d at 152.

Manor Care relies on *Solon Family Physicians, Inc. v. Buckles* in arguing that Ruppert's letter created a suretyship. In *Buckles,* an attorney signed a doctor's lien and also wrote a letter stating, "[T]his office will protect any outstanding bill for your services to the above referenced individual and we will see to it that your fee is paid promptly from the proceeds of the settlement." *Buckles,* 96 Ohio App.3d at 463, 645 N.E.2d at 151. The court held that the letter clearly guaranteed the payment of any outstanding bill. We question such a construction of the language, which seems to evince an intent to pay the bill only from the proceeds of the settlement.

Appellants rely on *Ohio State Univ. Hosp. v. Evans* (Sept. 21, 1995), Licking App. No. 95 CA 00019, unreported, 1995 WL 614937, in arguing that Ruppert's letter did not create a personal obligation for payment. In *Evans,* the court held that an attorney's correspondence with a hospital did not manifest an intention that the attorney be bound contractually for the hospital bill. The closest the attorney came to personally assuming responsibility for payment of the bill was in a "letter of protection" in which he stated: "If either of the two above actions are successful, the amount of your bill as stated above should be paid in full. If both the action in the Court of Claims [the Victims of Crime action] and the action against Zandex are unsuccessful, you will be paid a pro-rata amount of the settlement monies recovered which should be at least 90% of the amount of your claim listed above." *Id.*

---

**3.** Surely the term "jury verdict" was intended. Generally, money is not received solely by the act of filing a jury demand.

Although the attorney in *Evans* explained that payment would be made, he did not explicitly indicate that *he* would make the payment. The language in such an agreement is crucial to a determination whether a suretyship has been created.

Ruppert's letter is distinguishable from the letters in *Buckles* and *Evans*. Ruppert's letter makes clear that the firm would pay Manor Care's bill *out of any funds received*. Ruppert indicated that he would make sure only that Manor Care received payment from the proceeds, if funds were procured from settlement or suit, before Thomas received the money. Thus, Ruppert and the firm were only sureties to the extent that they received money from settlement or a suit. They would then hold that money in a fiduciary capacity.

Because we have held that summary judgment was inappropriate, and therefore that the bills from Manor Care have not been established as a payable debt, the trial court erred in granting summary judgment against Ruppert and the firm on the ground that they were personally responsible for payment of the bills. The second assignment is also sustained.

We reverse the judgment of the court of common pleas and remand this cause for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

HILDEBRANDT and GORMAN, JJ., concur.