DECISION AND JUDGMENT ENTRY INC
{¶ 1} This is an appeal from a Highland County Common Pleas Court summary judgment in favor of Fidelity and Deposit Company of Maryland and Highland County Water Company, defendants below and appellees herein.
 {¶ 2} Water Works Supplies, Inc., plaintiff below and appellant herein, raises the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
"The trial court erroneously granted Fidelity and Deposit Co.'s motion for summary judgment."
SECOND ASSIGNMENT OF ERROR:
"The trial court erred by dismissing WWS' claims against Highland County Water."
 {¶ 1} On March 7, 2000, Highland County Water Company (Highland County) entered into a contract with Grooms Construction Company, Inc.[1]
(Grooms) for a construction project known as the Phase VII-North Loop-Division A-Lines 100 and 200. Under the contract, Grooms was to serve as the general contractor.
 {¶ 2} The contract required Grooms to post a surety bond. To that end, on March 7, 2000, Grooms signed a payment bond contract. The payment bond contract states that Grooms is the principal and that appellee Fidelity and Deposit Company of Maryland (FD) is the surety.
 {¶ 3} The payment bond contract specifies that FD is "bound * * * unto all persons, firms, and corporations who or which may furnish labor, or who furnish materials to perform as described under the contract and to their successors and assigns in the total aggregate sum of * * *."
 {¶ 4} The payment bond contract further provides:
"[The] surety for value received hereby stipulates and agrees that no change, extension of time, alteration or addition to the terms of the contract or to the work to be performed thereunder or the specifications accompanying the same shall in any way affect its obligation on this bond, and it does hereby waive notice of any such change, extension of time, alteration or addition to the terms of this contract or to the work or to the specifications."
 {¶ 5} In March of 2000, Grooms contacted appellant to request that appellant provide materials for the construction project. When Grooms first contacted appellant, Grooms had an outstanding balance of $43,906.75 under an "open account agreement" that appellant and Grooms entered into on December 30, 1997. Initially appellant was hesitant, considering Grooms's outstanding balance, to provide further materials to Grooms. Grooms assured appellant, however, that it would pay the outstanding balance by the end of March 2000. Grooms also promised appellant that appellant would be Grooms's primary supplier on all future jobs. Appellant, armed with Grooms's assurances and with the knowledge that a payment bond had issued on the project, agreed to provide materials for the project under the terms of the parties' December 30, 1997 open account agreement.
 {¶ 6} On April 24, 2000, Grooms presented appellant with a check in the amount of $396,095.24 that Highland County had issued. The check listed Grooms, appellant, and two other suppliers as payees. In exchange for appellant's endorsement of the check, Grooms paid appellant the amount of Grooms's outstanding balance, $43,906.75.
 {¶ 7} On May 17, 2000, Grooms presented appellant with a second check that Highland County had issued in the amount of $471,997.23 that listed Grooms, appellant, and two other suppliers as payees. Appellant endorsed the check and Grooms paid appellant $91,432.05 as payment for supplies for the construction project.
 {¶ 8} On July 21, 2000, Grooms presented appellant with a third check that Highland County had issued in the amount of $176,600.76 that listed Grooms, appellant, and one other supplier as payees. Grooms requested appellant to endorse the check and, in exchange, Grooms represented that it would pay appellant $300,000 by July 25, 2000. Appellant endorsed the check. Grooms did not, however, pay appellant the $300,000.
 {¶ 9} On July 28, 2000, appellant notified FD of the amount Grooms owed appellant for materials supplied for the construction project. On August 14, 2000, appellant submitted to FD a formal claim on the payment bond. Appellant requested payment of $378,271 for materials supplied for the construction project.
 {¶ 10} By letter dated September 7, 2000, FD notified appellant that it would not pay under the bond. The letter states:
"The material facts revealed by FD's investigation are that from the outset of this project, the Highland County Water Company made direct payment to all material suppliers with checks payable jointly to Grooms Construction Co. and each material supplier. Highland County Water wrote each check beginning with the first check, date April 19, 2000 — in an amount sufficient to pay each supplier for all materials incorporated into the project or stored on-site. The checks were then delivered to each named payee for indorsement before being presented to the Water Company's Bank for payment."
 {¶ 11} On January 18, 2001, appellant filed a complaint against Grooms, Highland County, and FD to recover the unpaid balance of $337.540.71. On March 1, 2001, FD filed a motion to dismiss or, in the alternative, a motion for summary judgment. FD argued that appellant's conduct "impaired the `suretyship status' of FD, as defined in Section 37 of Restatement (Third), Suretyship and Guaranty (1996)." FD claimed:
"By receiving three checks made payable by Highland [County] to [appellant], indorsing them and returning them to Grooms without receiving payment from Grooms for the materials supplied to the Highland Project, [appellant] impaired FD's rights and voluntarily released from any liability to [appellant] under the Payment Bond."
FD further contended that under the "joint check rule," it was not liable under the payment bond. FD argued that when a subcontractor endorses a joint check, a presumption arises that the subcontractor has received all sums then owed to him.
 {¶ 12} In opposition, appellant argued that FD, as the surety on the payment bond, is primarily and jointly liable with Grooms for the amount owed. Appellant asserted that under the clear terms of the payment bond, FD must honor appellant's claim for payment. Appellant also disputed FD's claim that any suretyship defense is available and that the joint check rule applies. Appellant noted that no Ohio court has explicitly adopted either the Restatement's suretyship defenses or the joint check rule.
 {¶ 13} On September 27, 2001, the trial court granted summary judgment in FD's favor. The trial court concluded:
"[A]s a matter of law[,] * * * [appellant] had fundamentally altered the risks imposed upon [FD] by agreeing to a modification of the duty of the principal obligor Grooms in a fashion amounting to a substituted contract thereby imposing risks on [FD] fundamentally different from the risks imposed upon said [FD] prior to the modification. As a consequence, the aforesaid modification or new agreement for payment by contractor Grooms to [appellant] discharged the surety [FD] from any unperformed duties of Grooms."
 {¶ 14} The court also granted summary judgment in Highland County's favor. The trial court reasoned that Highland County had paid appellant the amounts owed, but that appellant failed to ensure that it received the payment it was due.
 {¶ 15} Appellant filed a timely notice of appeal.
 I {¶ 16} In its first assignment of error, appellant argues that the trial court erred by granting summary judgment in FD's favor. We agree.
 {¶ 17} Initially we note that when an appellate court reviews a trial court's decision regarding a motion for summary judgment, the appellate court conducts a de novo review. See, e.g., Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704,711, 622 N.E.2d 1153; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-12, 599 N.E.2d 786. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
 {¶ 18} Civ.R. 56(C) provides, in relevant part, as follows:
* * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164.
 {¶ 19} "Suretyship is the contractual relation whereby one person, the surety, agrees to answer for the debt, default or miscarriage of another, the principal, with the surety generally being primarily and jointly liable with principal." Solon Family Physicians, Inc. v. Buckles
(1994), 96 Ohio App.3d 460, 463-464, 645 N.E.2d 150, 152 (citing Hopkinsv. INA Underwriters Ins. Co. (1988), 44 Ohio App.3d 186, 188,542 N.E.2d 679, 682); see, also, Manor Care Nursing Rehab. Ctr. v.Thomas (1997), 123 Ohio App.3d 481, 487, 704 N.E.2d 593; St. Paul Fire Marine Ins. Co. v. Industrial Comm. of Ohio (1987), 30 Ohio St.3d 17,20, 506 N.E.2d 202 (stating that a surety is primarily and jointly liable with the principal debtor and that the surety's obligation is created concurrently with that of the principal debtor). A surety may assert certain defenses, however, to avoid being liable on the payment bond. See, generally, Restatement (Third), Suretyship and Guaranty Sections 39-44 (1996).
 {¶ 20} Generally, "when the principal and creditor, without the surety's consent, agree * * * to extend the time of payment by the principal, the surety is discharged." Lybeck and Shreves, The Law of Payment Bonds (1998) 286.
"Three reasons have been given for the rule:
(1) An extension substitutes a new contract for old by changing the time for payment or performance by the principal, provisions which may be important to the surety.
(2) An extension impairs the surety's subrogation (and other) rights in that the surety loses the option of performing the original contract and enforcing it against the principal.
(3) An extension increases the surety's risk in that the principal may become insolvent or unable to perform during the period of extension."
Id.
 {¶ 21} An agreement between the creditor and principal that extends the time for performance will not discharge the surety "absent a concrete showing of prejudice." Id. at 287. "[P]roof that the principal could have paid the debt at the time it was given the extension ought to be an adequate showing of prejudice." Id. at 287.
"[I]t ought to be an adequate showing of prejudice that the principal could have paid the debt by forwarding to the claimant its share of a payment received from the owner, had the claimant not given the principal an opportunity to misapply or dissipate those funds by agreeing to an extension."
Id.
 {¶ 22} In the case at bar, appellant extended the time for Grooms to pay. At first glance, therefore, FD has a valid defense. A surety bond is, however, a contract and a surety may contractually waive defenses. See Jeffrey B. Peterson Assoc. v. Dayton Metro. Hous.Auth. (July 21, 2000), Montgomery App. No. 17306, unreported (quotingState v. Scherer (1995), 108 Ohio App.3d 586, 591, 671 N.E.2d 545);Troyer v. Horvath (1983), 13 Ohio App.3d 155, 157, 468 N.E.2d 351, 353
("A bond is to be construed as a contract between the parties and interpreted in accordance with its terms."); Restatement (Third), Suretyship and Guaranty Section 6, p. 29 (1996) ("Each rule in [the] Restatement stating the effect of suretyship status may be varied by contract between the parties subject to it."); see, also, Section 48. Thus, to determine whether FD possesses a valid defense, we must examine the language of the payment bond. See G.F. Business Equip., Inc. v.Liston (1982), 7 Ohio App.3d 223, 224, 454 N.E.2d 1358 (stating that a surety "`is bound only by the precise words of his contract.'") (quotingMorgan v. Boyer (1883), 39 Ohio St. 324)).
 {¶ 23} In interpreting a surety contract:
"Other words cannot be added by construction or implication, but the meaning of the words actually used is to be ascertained in the same manner as the meaning of similar words used in other contracts. They are to be understood in their plain and ordinary sense, when read in the light of the surrounding circumstances and of the object intended to be accomplished."
"Furthermore, any doubtful language in the contract of surety must be construed strongly against the surety, and in favor of indemnity, which the creditor has reasonable ground to expect." Solon Family Physicians,96 Ohio App.3d at 464, 645 N.E.2d at 152.
 {¶ 24} In the case sub judice, the payment bond contract provides:
"[N]o change, extension of time, alteration or addition to the terms of the contract or to the work to be performed thereunder or the specifications accompanying the same shall in any way affect [FD's] obligation on this bond, and it does hereby waive notice of any such change, extension of time, alteration or addition to the terms of this contract or to the work or to the specifications."
Appellant, by not requiring Grooms to immediately pay appellant its share of the check, extended the time by which Grooms was required to pay appellant.[2] Appellant therefore extended the time for performance of the underlying contract. FD's payment bond contract expressly states that it waives notice of any extension of time and that such extension of time does not affect its obligation on the payment bond. Because the payment bond contract unambiguously states that any change, extension of time, alteration, etc., does not "in any way affect [FD's] obligation" under the payment bond," FD waived the defense that appellant impaired its suretyship status.[3]
 {¶ 25} Moreover, to the extent that doubt exists that the payment bond language waived the defense, the payment bond must be construed strictly against FD and in favor of appellant.
 {¶ 26} Accordingly, based upon the foregoing reasons, we sustain appellant's first assignment of error.
 II {¶ 27} In its second assignment of error, appellant asserts that the trial court erred by entering summary judgment in Highland County's favor without providing appellant notice that it was considering Highland County's oral summary judgment motion. We agree with appellant.
 {¶ 28} During the hearing regarding FD's motion, the trial court permitted argument from Highland County. After Highland County's argument, appellant informed the trial court that Highland County had not filed any motion and had not formally joined FD's motion. Appellant requested the trial court to afford it an opportunity to brief the issues Highland County raised, if the trial court were to consider dismissing appellant's claims against Highland County. Appellant did not have notice that the trial court was considering dismissing appellant's claims against Highland County.
 {¶ 29} "The trial court cannot properly decide a motion for summary judgment without first notifying the nonmoving party of the date of hearing or submission." Manor Care, 123 Ohio App.3d at 486,704 N.E.2d at 596. "`Because the granting of summary judgment is an adjudication on the merits, a non-moving party must be apprised of the time within which he or she must respond.'" Anania v. Daubenspeck Chiropractic (1998),129 Ohio App.3d 516, 522, 718 N.E.2d 480, 485 (quoting Ashworth v. Enon
(Oct. 18, 1995), Clark App. No. 95-CA-43, unreported).
 {¶ 30} In the case sub judice, appellant was not afforded an opportunity to defend against Highland County's oral summary judgment motion.[4]
 {¶ 31} Accordingly, based upon the foregoing reasons, we sustain appellant's second assignment of error. We hereby reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and this cause remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Evans, P.J.: Concurs in Judgment Opinion as to Assignment of Error II and Concurs in Judgment Only as to Assignment of Error I;
Abele, J. Kline, J.: Concur in Judgment Opinion.
[1] Although Grooms was named as a defendant in the trial court proceedings, Grooms is not involved in the instant appeal.
[2] FD asserts that Ohio courts should recognize the "California joint check rule" in the situation present in the instant case. This rule provides that when a subcontractor and his materialmen are joint payees, and no agreement exists with the owner or general contractor as to the allocation of the proceeds, a materialman, by endorsing the check, is deemed to have received the monies due him. Post Bros. Construction Co.v. Yoder (Cal. 1977), 569 P.2d 133; see, also, Lybeck and Shreves, The Law of Payment Bonds (1998), 260. We note, however, that the joint check rule has not been universally recognized or adopted. Both federal and state courts have held that a joint check arrangement, standing alone, does not waive a supplier's right to recover from a contractor's surety. See, e.g., United States ex rel. Clark-Fontana Paint Co. v. GlassmanConstruction Co. (C.A.4, 1968), 397 F.2d 8; United States ex rel.Youngstown Welding and Eng'g Co. v. Travelers Indem. Co. (C.A.9, 1986),802 F.2d 1164. Other courts have, however, followed and adopted the joint check rule.
[3] We disagree with appellee that appellant, by failing during the trial court proceedings to point to the specific language in the payment bond quoted above, waived the argument that the language in the payment bond determines FD's liability. Appellant's memorandum in opposition to appellee's summary judgment motion advised the court that the clear language of the payment bond controlled to determine FD's liability.
[4] Additionally, we question whether a party may properly move for summary judgment without filing a written motion. See Civ.R. 56.