[Cite as *Huntington Natl. Bank v. Schneider*, 2023-Ohio-4813.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| THE HUNTINGTON NATIONAL BANK, as administrative agent, | : | APPEAL NO. C-230072<br>TRIAL NO. A-2002093 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| RAYMOND SCHNEIDER, | : | |
| Defendant-Appellant, | : | |
| and | : | |
| HAROLD SOSNA, | : | |
| and | : | |
| FAYE SOSNA, | : | |
| Defendants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: December 29, 2023

*Buchanan Ingersoll & Rooney PC*, *Christopher P. Schueller* and *Timothy Palmer*, for Plaintiff-Appellee,

*Strauss Troy Co., LPA*, *Richard S. Wayne*, *Amy L. Hunt*, *Ryan F. Hemmerle* and *Jeffrey A. Levine*, for Defendant-Appellant.

**ZAYAS, Judge.**

**{¶1}** Defendant-appellant Raymond Schneider appeals the judgment of the Hamilton County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee The Huntington National Bank, as administrative agent ("Huntington"), on its claim against Schneider for breach of a "Guaranty" agreement. For the reasons that follow, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion and the law.

## I. Background

**{¶2}** This case concerns the liability of Schneider for an over $75 million dollar debt created pursuant to a credit agreement (the "credit agreement") by and between numerous lenders and borrowers relating to the operation of seven senior skilled-nursing facilities. Schneider entered into a "Guaranty" agreement (the "guaranty agreement") with Huntington in which he absolutely and unconditionally guaranteed the prompt payment in full of the debt as and when the respective parts thereof became due and payable. After certain defaults by the borrowers, Huntington filed suit against Schneider for breach of the guaranty.

**{¶3}** Huntington ultimately moved for summary judgment on its claim, asserting that Schneider was notified of the acceleration of payment upon default and Huntington was therefore entitled to judgment against him. Schneider opposed summary judgment, arguing that genuine issues of material fact remained as to his defenses to enforcement. Namely, he argued that the evidence in the record showed that Huntington concealed certain adverse facts not available to him at the time of entering the guaranty which materially increased his risk beyond that which Huntington had reason to believe he intended to assume when he signed the guaranty. Huntington responded, asserting that Schneider waived any right to argue against

enforcement of the guaranty for any reason. Huntington additionally asserted that it had no duty to disclose the information to Schneider and the record lacked evidence that Huntington knew Schneider did not have accurate and complete information.

{¶4} The trial court ultimately granted summary judgment in favor of Huntington. The trial court first found that Schneider waived any defenses available to him in the agreement, whether known or unknown at the time of signing. The trial court additionally found that, although the record showed that it was plausible that Huntington knew of facts unknown to Schneider that materially increased his risk beyond that which Huntington had reason to believe he intended to assume, the defense was unavailable to Schneider as he was merely a guarantor, i.e., a secondary obligor, under the guaranty, rather than a primary obligor. The trial court further found that summary judgment was appropriate as Schneider could not meet the elements of a fraudulent-inducement claim.[1]

{¶5} Schneider now appeals, arguing in a single assignment of error that the trial court erred in granting summary judgment in favor of Huntington.

## II. Law and Analysis

### A. Standard of Review

{¶6} A party seeking to recover on a claim may move for summary judgment in the party's favor as to all or a part of the claim. Civ.R. 56(A). Summary judgment should be rendered in the party's favor if the timely filed Civ.R. 56(C) permissible evidence shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The permissible evidence for the trial court to consider includes the pleadings, depositions, answers to

---

[1] While the record is unclear as to whether Schneider was arguing fraud in the inducement below, it is clear here on appeal that he is not asserting an argument concerning fraud in the inducement.

interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. *Id.* No other evidence or stipulations may be considered except as stated in Civ.R. 56. *Id.* Summary judgment "shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Id.*

{¶7} In other words, to obtain summary judgment, the moving party must show that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion when reviewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The moving party has the initial burden of informing the trial court of the basis for the party's motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 294 (1996). If the moving party meets this initial burden, the nonmoving party then bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). If the nonmoving party does not do so, then summary judgment is appropriate and must be entered against the nonmoving party. *Id.* This court reviews a trial court's grant of summary judgment do novo. *Mid-Century Ins. Co. v. Stites*, 1st Dist. Hamilton No. C-200421, 2021-Ohio-3839, ¶ 10.

### B. Genuine Issues of Material Fact Remain as to Waiver

{¶8} Schneider argues that the trial court erred in finding that he waived the ability to present any defense to enforcement of the guaranty. We agree.

4

**{¶9}** The liability of a surety or guarantor is determined by the terms of the contract. *O'Brien v. Ravenwoods Apartments, Ltd.*, 169 Ohio App.3d 233, 2006-Ohio-5264, 862 N.E.2d 549, ¶ 21-23 (1st Dist.). The agreement is interpreted as any other contract under Ohio law. *Id.* at ¶ 23. If the terms are clear and unambiguous, a court may not construe it to have any other meaning. *Id.*

**{¶10}** "As a general rule of construction, a court may construe multiple documents together if they concern the same transaction." *Center Ridge Ganley, Inc. v. Stinn*, 31 Ohio St.3d 310, 314, 511 N.E.2d 106 (1987).

**{¶11}** Here, the original guaranty agreement provides that Schneider's liabilities and obligations under the agreement are absolute and unconditional "irrespective of any lack of validity or enforceability of the Credit Agreement, any note, any Loan Document or any other agreement, instrument or document evidencing the Debt or related thereto, or any other defense available to [Schneider] in respect of this agreement."

**{¶12}** However, a subsequent agreement—in which the parties reaffirmed the guaranty and other loan documents upon amendment of the underlying credit agreement—provides:

> The undersigned [Schneider] hereby represent[s] and warrant[s] to the Agent and the Lenders, and agree[s] with Agent and the Lenders, that the undersigned [has] no claim or offset against, or defense or counterclaim to, any obligation or liability under the Collateral Documents to which he * * * is a party, and the undersigned hereby waive[s] and release[s] Agent and the lenders * * * from any and all claims, offsets, defenses and counterclaims *of which the undersigned is aware*, such waiver and release being with full knowledge and

5

understanding of the circumstances and effect thereof and after having consulted legal counsel with respect thereto.

{¶13} "When the terms of the contract are contradictory, the terms added later supersede the original terms to the extent of the contradiction." (Citations omitted.) *Sites v. Moore*, 79 Ohio App.3d 694, 699, 607 N.E.2d 1114 (4th Dist.1992); *see, e.g., Tillimon v. Jankowski*, 6th Dist. Lucas No. L-91-262, 1992 Ohio App. LEXIS 2752, 5 (May 29, 1992); *Lamkin v. First Community Bank*, 10th Dist. Franklin No. 00AP-935, 2001 Ohio App. LEXIS 1450, 23 (Mar. 29, 2001); *Ottery v. Bland*, 42 Ohio App.3d 85, 87, 536 N.E.2d 541 (10th Dist.1987).

{¶14} Additionally, " '[i]t is well established that when a contract contains both general and specific language the more specific language controls.' " *Royal Appliance Mfg. Co. v. Fernengel*, 8th Dist. Cuyahoga No. 51268, 1987 Ohio App. LEXIS 8491, 16 (Aug. 27, 1987), quoting *Ins. Co. of N. Am. v. Wells*, 35 Ohio App.2d 173, 300 N.E.2d 460 (10th Dist.1973).

{¶15} Here, the original waiver provision is an all-encompassing waiver of *any* defenses available to Schneider. However, the new waiver provision waives only *known* defenses. The new waiver provision is either contradictory to or more specific than the original provision. Therefore, we hold that the new language is controlling, and, under the plain language of the contract, Schneider waived only known defenses against enforcement of the guaranty. Consequently, the trial court erred in granting summary judgment on this issue as Schneider waived only known defenses and genuine issues of material fact remain as to Schneider's knowledge of his asserted defense.

**C. Huntington Had a Duty to Disclose Material Adverse Facts to Schneider**

**{¶16}** Schneider next argues that the trial court erred in finding that Huntington did not owe him a duty of disclosure as he is a surety under the agreement, i.e., a primary obligor, rather than a guarantor. We agree.

**{¶17}** "Suretyship is a contractual relation whereby one person, the surety, agrees to answer for the debt, default, or miscarriage of another, the principal, with the surety generally being primarily and jointly liable with the principal." *PNC Bank v. Schram*, 1st Dist. Hamilton No. C-980683, 1999 Ohio App. LEXIS 1911, 8 (Apr. 30, 1999), quoting *Manor Care Nursing & Rehab. Ctr. v. Thomas*, 123 Ohio App.3d 481, 487-488, 704 N.E.2d 593 (1st Dist.1997); *accord, e.g., Madison Natl. Bank v. Weber*, 117 Ohio St. 290, 293, 158 N.E. 543 (1927). "The primary distinction between a surety and a guarantor is that a surety is primarily liable with a principal, whereas the liability of a guarantor is secondary and collateral if the principal does not perform." *Id.*, quoting *Thomas*. A surety's obligation is created concurrently with that of the principal debtor. *Weber* at 293. In other words, the contract of surety "is made at the same time and usually with that of the principal, while that of a guarantor is a contract separate and distinct from that of the principal." *Id.* A suretyship is created only through an express agreement and will not be implied. *Schram* at 8. As such, we must examine the precise wording of the contractual language as the language is crucial to the determination of whether the creation of a suretyship was intended. *Id.*

**{¶18}** Here, the guaranty agreement was entered the same day as the credit agreement creating the underlying obligation. The guaranty agreement provides:

> Guarantor hereby absolutely and unconditionally guarantees the prompt payment in full of all of the Debt *as and when the respective parts thereof become due and payable*. If the Debt or any part thereof

shall not be paid in full when due and payable, Agents and the Lenders, in each case, shall have the right to proceed directly against Guarantor under this Agreement to collect the payment in full of the Debt, regardless of whether or not Agent or Lenders shall have theretofore proceeded or shall then be proceeding against any Borrower or any other Person obligated on the Debt or Collateral, if any, or any of the foregoing, it being understood that Agent and the Lenders, in their sole discretion, may proceed against any Borrower or any other Person obligated on the Debt and any Collateral, and may exercise each right, power or privilege that Agent may then have, either simultaneously or separately, and, in any event, at such time or times and as often and in such order as Agent and the Lenders, in their sole discretion, may from time to time deem expedient to collect the payment in full of the debt.

(Emphasis added.)

{¶19} Further, the credit agreement provides:

To induce the Lenders and the L/C Issuer to provide the credits described herein and in consideration of benefits expected to accrue to the Borrowers by reason of the Commitments and the Loans and for other good and valuable consideration, receipt of which is hereby acknowledged, *each Borrower, each Guarantor and each Subsidiary of the Borrowers party hereto * * * , hereby unconditionally and irrevocably guarantees jointly and severally* to the Administrative Agent, the Lenders, the L/C Issuer and their Affiliates that are parties to any document evidencing the Hedging Liability or Bank Product Liability, the due and punctual payment of all present and future

8

Secured Obligations, Hedging Liability, and Bank Product Liability, including, but not limited to, *the due and punctual payment of principal of and interest on the Loans, the Reimbursement Obligations, and the due and punctual payment of all other Secured Obligations now or hereafter owed by the Borrowers under the Loan Documents and the due and punctual payment of all Hedging Liability and Bank Product Liability, in each case as and when the same shall become due and payable, whether at stated maturity, by acceleration, or otherwise, according to the terms hereof and thereof.* In case of failure by any Borrower *or other obligor* punctually to pay any Secured Obligations, Hedging Liability, or Bank Product Liability guaranteed hereby, each Guarantor hereby unconditionally, jointly and severally agrees to make such payment or to cause such payment to be made punctually as and when the same shall become due and payable, whether at stated maturity, by acceleration, or otherwise, and as if such payment were made by such Borrower or such obligor.

(Emphasis added.)

{¶20} Construing these provisions together, it is clear that Schneider's liability was intended to be primary and joint with the borrowers to ensure payment of the debt *as and when it becomes due and payable*. Nowhere in the agreements is there any indication that Schneider's liability was conditional upon or secondary to any primary obligation held solely by the borrowers for payment, or that Schneider's liability became primary only upon some default by the borrowers. Therefore, because Schneider is primarily liable under the agreements for the debt as and when the payment became due and payable, we hold that Schneider is a surety under the

agreements. Accordingly, the trial court erred in finding that Schneider was merely a guarantor.

{¶21} Schneider next argues that, because he is a surety under the agreement, Huntington had a duty to disclose the adverse facts not available to him that materially increased his risk beyond that which Huntington had reason to believe he intended to assume. Huntington argues that, even under surety law, it had no duty to "conduct underwriting" and present Schneider with a risk analysis before he signed any loan documents.

{¶22} A creditor owes a duty of disclosure to a surety where (1) the creditor knows facts which materially increase the risk beyond that which the creditor has reason to believe the surety intends to assume, (2) the facts are unknown to the surety, (3) the creditor has reason to believe the facts are unknown to the surety, and (4) the creditor has a reasonable opportunity to communicate the facts to the surety. *Kawasaki Motors Corp., U.S.A. v. Navratil*, 3d Dist. Hancock No. 5-84-26, 1985 Ohio App. LEXIS 9104, 8 (Oct. 9, 1985) (citing and adopting the Restatement of the Law, Security, Section 124(1) (1941) after finding, upon careful consideration, that the Restatement is a correct reflection of the current state of the law); *accord, e.g., State Sav. & Trust Co. v. Grady*, 20 Ohio App. 385, 389-390, 153 N.E. 238 (9th Dist.1923). The failure of a creditor to notify a surety of such facts is a defense to the surety. *Id.* However, "there is no duty imposed on the creditor to conduct an investigation for the surety's benefit." *Id.* "Therefore, if the creditor is no more than negligent in not discovering facts which affect the risk, the surety will not be discharged from his obligation." *Id.*, citing Restatement of the Law, Security, Section 124, Comment b (1941).

10

{¶23} The underlying credit agreement was entered on November 30, 2018, by and between 14 borrowers (collectively, "the borrowers"), certain guarantors, certain lenders (collectively "the lenders"), and Huntington, as administrative agent and "L/C Issuer." The agreement offers that the borrowers had requested, and the lenders agreed, to extend certain "credit facilities" on the terms and conditions of the agreement. Under the agreement, Huntington—as the administrative agent—was required to evaluate and certify the solvency and financial condition of the borrowers and guarantors, and the value of the collateral.

{¶24} The 14 borrowers under the loan consisted of various entities involved in the ownership and/or operation of the seven senior skilled-nursing facilities benefited by the agreement. Half of these entities, the Keller Group, were owned jointly by Schneider and Harold Sosna, each owning 50 percent. The other half of the entities, the JBZ Group, were solely owned by Sosna. Schneider and Sosna each—separately—entered into a guaranty agreement with Huntington on the day of the credit agreement, guarantying the payment of the underlying debt.

{¶25} In his affidavit offered in opposition to summary judgment, Schneider claimed that, while he had 50 percent ownership in the Keller Group, Sosna was the managing member of those companies and maintained exclusive control and oversight over all day-to-day operations. He said that he was a silent partner and Sosna was in control and maintained the financial statements of the Keller Group. He claimed he was never provided with any financial information about the Keller Group, despite multiple requests. He further claimed that he never had access to any financial information related to the JBZ Group, or any information pertaining to Sosna's personal financial situation.

11

**{¶26}** He denied any involvement in securing or negotiating the loan, or ever discussing his guaranty with Huntington. He claimed that Huntington knew, and failed to tell him, various adverse facts pertaining to the financial condition of Sosna and the JBZ Group prior to requiring him to sign a guaranty for the entire loan amount, despite only having 50 percent ownership in certain involved entities. He further claimed that Sosna told him the guaranty agreement was required because the Keller Group Properties did not have sufficient value to support his portion of the loan and Huntington therefore would not approve the loan unless he signed the guaranty for the entire borrowed amount, even though the Keller Group was only receiving approximately 44 percent of the loan proceeds.

**{¶27}** The record can be read to support that, while Huntington's initial investigations into the involved entities and guarantors seemed positive, Huntington became aware in March 2018 that quarterly performance for the JBZ Group had "dropped off significantly." As a result, the loan was put "on hold" in August 2018 since the original projections were not being achieved. Afterward, the loan was restructured and, rather than being split into three obligated groups—one consisting of the Keller Group entities, one consisting of the JBZ Group entities, and one consisting of entities from both—who were each responsible for certain amounts under the loan, as was originally intended, there was now to be only one obligated group and Schneider was to guaranty the entire loan amount, rather than just the portion pertaining to his obligated group. One of the bases relied upon by Huntington to rationalize the restructuring of the loan was the "significant syndication and derivative revenue" that the loan would generate for Huntington as the lead agent bank.

**{¶28}** Further, emails from Huntington reveal that Huntington was aware that checks were being held by certain facilities due to cash-flow issues and that there were outstanding checks in the amount of $747,000 as of July 2018. The emails indicate that Huntington felt this was "a little concerning," and was seeking an explanation for these issues.

**{¶29}** Even further, the record can be read to support that Huntington had a "close relationship" with Sosna and was in direct communication with Sosna pertaining to his personal financial situation, in which Sosna revealed that he had $8 million invested into his personal home and a $4 million mortgage on the home but could not get an appraisal for more than $2 million. Huntington responded that it would assist Sosna in taking a "subjective view" of things and utilize the process in place for "situations like that."

**{¶30}** Based on the evidence in the record, a reasonable fact finder could find that Huntington was aware—through its own investigation—of adverse facts relating to the financial position of the other borrowers and/or guarantors which would materially increase Schneider's risk under the guaranty agreement beyond that which Huntington had reason to believe he intended to assume before requiring him to guarantee the entire loan amount.

**{¶31}** Additionally, Schneider denied having any information relating to the financial position of Sosna or any of the borrowing entities, including the entities in which he had partial ownership, at the time he entered into the guaranty agreement, and no evidence was put forth to dispute this assertion. Further, the record can be read to support that Schneider was "blindsided" by the actions of Sosna.

**{¶32}** Huntington argues that it "could only have liability under surety law if Huntington knew Schneider was making decisions based on false or inaccurate

13

information, and there is no such evidence in the record." However, the requirement is only that Huntington had reason to believe that Schneider did not know about the adverse facts related to the financial positions of Sosna and the JBZ Group. Schneider only had partial ownership in the Keller Group properties, and he was a silent partner in relation to those entities. He did not have any ownership in the JBZ Group properties or Premier, which was the management company of the nursing facilities. Huntington knew of the ownership and management responsibilities of each person at the time of the refinancing. Additionally, the entirety of the communications pertaining to the refinancing were solely between Huntington and Sosna, either personally or through Sosna's financial advisor. A reasonable fact finder could find this information sufficient to show that Huntington had reason to believe that Sosna would not tell Schneider about the adverse financial information relating only to himself and his individually-owned entities.

{¶33} Lastly, the record can be read to support that Huntington was in direct communication with Capital Point Advisors, which obtained Schneider's personal information to provide to Huntington. This reveals that Huntington had a line of communication to Schneider, outside of Sosna, which was utilized. Therefore, a reasonable fact finder could find that Huntington had a reasonable opportunity to communicate the adverse facts to Schneider, had it wished to do so.

{¶34} Therefore, based on the evidence in the record, we hold that a reasonable fact finder could find the elements met to prove a material nondisclosure which could invalidate the guaranty agreement. Accordingly, summary judgment was improperly granted as genuine issues of material fact remain regarding Schneider's defense to enforcement of the guaranty.

### III. Conclusion

{¶35} Based on all the foregoing, we hold that summary judgment was improperly granted in favor of Huntington as Schneider met his burden in opposition to summary judgment to set forth specific facts showing there are genuine issues remaining for trial. Accordingly, we sustain the assignment of error.

{¶36} Having sustained the sole assignment of error, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion and the law.

Judgment reversed and cause remanded.

**CROUSE, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its own entry this date.